## THE WATER LOT COMPANY *vs.* LEONARD.

1. Apparent defects in a declaration that could be cured by amendment are not material.

2. The Water Lot Company sold to Van Leonard, in trust for the Howard Manufacturing Company, a water lot, No. 11, in which were various covenants. In one place, in one of the deeds between the parties, Van Leonard was styled trustee of the Howard Manufacturing Company; in another, trustee of the stockholders of the Howard Manufacturing Company. In the deeds there were various covenants: among others, after stipulating how the canal or reservoir was to be finished, the waste-way not being considered sufficiently deep to carry off the waste water from the machinery, the Water Lot Company agreed to blast out the waste-way opposite to lots 13, 14, 15, the Howard Manufacturing Company to blast out opposite 11 and 12, all being below 11, on which the Howard Manufacturing Company intended to put up machinery. There was this further stipulation: That the Water Lot Company would "so finish all the eyes in the canal or reservoir as to furnish and contain in said canal water in sufficient quantity to propel the machinery placed and erected on lot No. 11, by Leonard." After erection of buildings, etc., on the lot, the whole property was sold at sheriff's sale, as the property of the Howard Manufacturing Company. On an action brought by the Howard Manufacturing Company for breach of covenant and injuries sustained by the Howard Manufacturing Company prior to the sale, one Parr, who held an interest in the property under the purchaser at such sale was offered as a witness: *Held,*

1. That Parr was not interested in the result of that suit, and competent.

2. That the styling of Van Leonard in the one as trustee for the Howard Manufacturing Company, and in the other as trustee for the stockholders of Howard Manufacturing Company, was immaterial, and explained itself.

3. That the Water Lot Company did not covenant against low water, or

to supply the machinery with water at all events, but the parties contracted on the basis that if all the covenants were performed as stipulated, in regard to canal, waste-way and eyes, that a sufficiency of water would be supplied.

4. That the mutual covenants as to blasting and blowing out the race or waste-way, were independent, and not dependent, they going to a part, and not the whole of the consideration.

5. That the measure of damages was the interest on the investment for the time the machinery was not employed for want of water; and in case only a part of the machinery was idle, interest on a like proportion of the investment.

6. The plaintiff is not compelled to expose himself to a trespass to protect the defendant from the consequence of his breach of the contract.

7. When the verdict is sustained by the proof, the case will not be sent back for an immaterial error in the charge of the Court.

Covenant, in Muscogee Superior Court. Tried before Judge WORRILL, at November Term, 1859.

This was an action brought by Van Leonard, trustee of the Howard Manufacturing Company, against The Water Lot Company of Columbus, alleging that the defendant sold plaintiff lot of land No. 11, on Bay street, in the city of Columbus, Georgia, near the Chattahoochee river; that at the time of said sale, said parties, among other things, covenanted as follows:

"That the building or buildings which might be erected by the said Van Leonard, trustee as aforesaid, his heirs and assigns, on said lot No. 11, should be fire-proof outside, and should be placed equi-distant from the north and south lines of said lot, and should not exceed fifty feet in width, so that there should be an open space and uncovered of eleven feet of ground between the walls of said buildings and said boundary lines of said lot. And further, that the said lot No. 11, either in the hands of Van Leonard, trustee as aforesaid, or his heirs and assigns, should be made permanently chargeable with one-nineteenth part of the expense of repairing the dam across the said river, (Chattahoochee), and said canal or reservoir; and it was also covenanted and agreed at the time and place aforesaid, on the part of said Water Lot Company, with the said Van Leonard, trustee as aforesaid, his heirs and assigns, that the said company would not

bargain and sell any of the lots undisposed of to any person or persons, except upon condition that the building or buildings which might be erected should be equi-distant from the boundary lines, as hereinbefore expressed.   And further, that the said Van Leonard, trustee as aforesaid, his heirs and assigns, should be entitled to use the water commanded by said dam across the river, and said canal and reservoir, in proportion to the number of lots in said survey now improved, or which might hereafter be improved, and when all of said lots, to-wit: nineteen in number, should be improved, the said Van Leonard, trustee as aforesaid, his heirs and assigns, should be entitled to use one-nineteenth part of all the said water commanded by the said dam and canal; which water was to be taken from said canal and conducted across the water passage, or waste-way, in flumes, or acqueducts, in such manner as not to impede or obstruct the passage of the water through said waste-way from the machinery above said lot, 11.   And it was further covenanted and agreed at the time and place aforesaid, on the part of said Water Lot Company, with said Van Leonard, trustee as aforesaid, his heirs and assigns, that the said company would not erect, or grant the privilege to others of erecting, on any of said water lots, from lot No. 1, on which the factory, then in operation, was standing, to lot No. 19, any building or buildings other than such as might be fire-proof outside, as before prescribed for the manner of construction of the building by said Van Leonard, trustee as aforesaid on lot No. 11.   And it was covenanted on the part of Van Leonard, trustee as aforesaid, that he would not erect on lot 11 any fixtures for the purpose of sawing logs."   And by another deed between the same parties, it was further covenanted as follows:

"And whereas, the said Water Lot Company had constructed a dam across the Chattahoochee river opposite to said city of Columbus, and also a basin, or canal, which said basin was not then (at the date of the former deed) fully completed, and for the consideration mentioned in said indenture, the said Water Lot Company did covenant and agree with the said Van Leonard, trustee as aforesaid, to finish said basin, or canal, in the following manner, to-wit: That the top of the western wall of said canal should be laid with large rock and bolted together with substantial iron rods and cemented with hydraulic cement for the distance of

one hundred and fifty feet from the present dam across the river, and that the whole of the then unfinished part of said western wall above water, for fifty feet from said dam, should be laid in good lime mortar, and that the west side of the west wall of said canal should be finished with a tumbling dam, having an angle of forty-five degrees, made of sufficiently large timbers, covered with plank three inches thick, extending from the present dam down the said western wall for one hundred and fifty feet, or to the ferit-eye in said wall, and that the said timbers supporting said plank should be bolted at the top and bottom with iron rods.   And said Water Lot Company did further covenant and agree to blast and blow out said race, or waste-way, opposite to lots Nos. 13, 14 and 15, to the width of 60 feet, and to the then depth of said race, or waste-way, opposite to each or any of said lots. And the said Leonard, trustee as aforesaid, did, on his part, covenant to blast out said race, or waste-way, opposite to lots Nos. 12 and 11, to the same width and depth as aforesaid. And said Water Lot Company did further covenant, on the day and year aforesaid, with said Van Leonard, trustee as aforesaid, so to finish all the eyes in the canal, or reservoir, as to furnish and contain in said canal water in sufficient quantity to propel the machinery placed and erected on lot No. 11 by Leonard, trustee as aforesaid, his associates and assigns."

The declaration, after stating these covenants, then closed, as follows: " And although said plaintiff has well and truly performed and fulfilled all and singular the covenants and agreements in the said deed of indenture mentioned on his part, and behalf to be done and performed, yet the said defendant has not performed and fulfilled the covenants mentioned on the part of said defendant to be done and performed.   And the said plaintiff in fact says that at the time and place aforesaid, after the making of said indenture, the said defendant did not blast and blow out the race, or waste-way, opposite to the lots Nos. 13, 14 and 15, to the width of 60 feet and to the depth of said race, or waste-way, opposite to each or any of the said lots, as by the said covenant the said defendant was bound to do ; and though requested since that time to do and perform the said covenant according to the obligation of said indenture, the said defendant did not, nor would blast or blow out said race, or waste-way, opposite

to the lots Nos. 13, 14 and 15, to the width of 60 feet and to the then depth of said race, or waste-way, opposite to each or any one of said lots, but wholly neglected and refused so to do; so that the said covenant of the said defendant remains unperformed, whereby the water of the said waste-way is unable to escape, and has been ever since the making of said indenture, and still is backed against the wheel erected by the plaintiff on lot No. 11, for the propulsion of machinery, so that the same is rendered almost useless to the plaintiff for the purpose of propelling machinery. And the said plaintiff further says, that at the time and place aforesaid, after the making of said indenture, the said defendant did not finish all the eyes in said canal in said indenture mentioned, or reservoir, in such manner as to furnish and contain in said canal water in sufficient quantity to propel the machinery placed and erected on lot No. 11 by said plaintiff, trustee as aforesaid, as by the said covenant the said defendant was bound to do; and although often requested by said plaintiff since that time to do and perform said covenant, the said defendant did not and would not finish all the eyes in said canal, or reservoir, in such manner as to furnish and contain in said canal water in sufficient quantity to propel the machinery placed and erected on said lot No. 11, but wholly neglected and refused to do so; so that the said covenant remains unperformed, so that the eyes in said canal do not furnish, and the said canal does not contain sufficient quantity of water to propel the machinery erected on said lot No. 11; and so the said plaintiff says that the defendant hath broken the said covenant with said plaintiff, and has refused, and still does neglect and refuse to perform the same to the damage of plaintiff," etc.

When this case came up for trial, counsel for defendant demurred to plaintiff's declaration on the grounds following:

1st. Because the Howard Manufacturing Company had no right to sue by a trustee.

2d. Because the deed set forth in the declaration shows Leonard to be trustee for the stockholders, and not for the Company.

3d. Because the declaration does not aver specifically that the plaintiff has done and performed his covenants to blast out the canal opposite to lots 11 and 12.

4th. Because the declaration does not aver that after a

lapse of a reasonable time defendant failed to perform its covenant.

5th. Because the declaration declares for damages on account of the erection of building, machinery, etc.

6th. Because the declaration does not aver any time when defendant was requested to perform its covenants, and does not aver an offer of plaintiff to perform his, or a readiness so to do.

The Court overruled the demurrer, and counsel for defendant excepted.

The plaintiff then offered in evidence the deed containing the first mentioned covenants in the declaration, which was signed by the President and Directors of the Water Lot Company. The defendant's counsel objected to the admission of the deed until an order should be shown authorizing the making thereof. The objection was overruled, and defendant excepted.

Plaintiff then offered articles of agreement executed in the same manner as said deed, and purporting to be made between the said Van Leonard, as trustee for the stockholders of said Manufacturing Company of the one part, and the said Water Lot Company of the other part.

Defendant objected to the paper being read in evidence on the same ground urged against said deed; and further, because it varied from plaintiff's declaration, and because the covenants therein were between different parties from those in the deed.

The Court overruled these objections, and defendant's counsel excepted.

Plaintiff then introduced Mr. Parr, who, on his *voir dire*, stated, that he purchased from the purchaser at sheriff's sale, an interest in the Howard Manufactory, and was now a part owner of lot No. 11, (the property of the Howard Manufacturing Company having been all sold at sheriff's sale.) Defendant objected that the witness was interested, and therefore incompetent.

The Court overruled the objection, and defendant excepted.

Plaintiff then proposed to prove by Mr. Parr the value of the house and machinery erected on lot No. 11, and also the value of an operative house erected by the Howard Manufacturing Company on another lot, plaintiff's counsel stating

that they expected to connect this value with the value from 1848 to 1852, and to prove that the witness was an expert.

Defendant objected to the evidence. The objection was overruled, and defendant excepted.

Mr. Parr, after stating that he was an expert, testified, that in June, 1855, the building and machinery on said lot were worth one hundred and twenty thousand dollars, and the operative house. He was also permitted to testify, defendant objecting, that in his opinion, if the canal opposite lots 12, 13, 14 and 15 had been blasted out as deep as the bottom opposite lot 11, all the machinery of the Howard Manufacturing Company could have been run either in high or low water. He also testified, defendant objecting, that at the time he went to the Factory, they had one Morris wheel to turn the machinery ; that with an ordinary head of water, that wheel, would, in his opinion, run all the machinery, and that in low water, with the obstructions in the canal, that wheel would not run more than two-thirds of it. He testified, that in 1855, a new wheel was added; that the race opposite No. 12 is not blasted out, and that it would have been of little or no benefit to the Factory to blast out opposite 13, 14, 15 and 16, unless opposite 12 was also blasted.

J. R. Brown testified for plaintiff, defendant objecting, that in 1849 the probable cost of the machinery and Factory was one hundred and twenty thousand dollars; that with sufficient water, all the machinery could have been run—an ordinary head of water would have given sufficient speed; that for three or four months of the summer or fall of 1851, there was not water enough to run any of the machinery of plaintiff. He further testified, that the Morris wheel required a great deal more water than some other kinds of wheels.

James Welch testified for plaintiff, defendant objecting, that in 1848 there was not as much machinery in the Factory by about one-half as in 1849, and that from 1849 to 1852 there was but little change, if any, in the amount and value of machinery therein, but he did not know the value of it; the building was worth from twenty to twenty-five thousand dollars; that for two months in 1849, about one-third of the machinery could not be run on account of low water, and that such was the case also in 1850.

John G. Winter testified for plaintiff, defendant objecting,

that there was but little increase in the machinery from 1849 to 1853; that in 1849, 1850 and 1851, whenever the water got low, a part of the machinery had to be stopped; that in his opinion, the eyes at the mouth or opening of the canal (they were known as flood-gates, and not called eyes) were too small; they were opened larger, and finally the whole mouth opened in 1849, and then the water flowed into the canal more freely; there were also some loose rocks near the mouth of the canal obstructing some little the free flow of water

The plaintiff, after introducing other evidence not objected to, closed his case.

Mr. Cockran, introduced by defendant, testified, amongst other things, that the Howard Factory building was in the canal opposite lot 11; that is, over the line of the lot about five feet.

Objection being made to this evidence, the Court stated that he would admit it for the purpose only of showing that thereby the defendant was less able to perform his covenants. To which decision the defendant excepted.

The defendant then offered in evidence a deed to lot 11 from Van Leonard to the Howard Manufacturing Company, dated April 30, 1852, consideration five dollars, plantiff objecting. The Court rejected the evidence and defendant excepted.

The Court charged the jury as follows:

"It appears that the defendant, by contract in evidence, agreed to finish all the eyes in the canal or reservoir so as to contain and furnish a sufficiency of water to run all the machinery of plaintiff to be put on lot 11, and also to blast out the rock opposite lots 13, 14 and 15, sixty feet wide and as deep as the old canal. It was the defendant's duty to so finish the eyes or to so construct the race as to furnish and contain, at either high or low water, a sufficiency of water to run with proper speed all the machinery that the plaintiff put on lot 11. If the defendant failed to finish or to so construct the eyes or canal as to contain sufficient water to run plaintiff's machinery, then there is a breach, and plaintiff is entitled to recover. If it is your opinion, from the evidence, that the defendant did not so finish the eyes or construct the canal as to furnish and contain a sufficiency of water to run plaintiff's machinery at all times, you will then

find whether on account of this the plaintiff has been injured, and if so, will estimate the damages as follows: You will find the value of the Factory buildings and machinery; you will then find how much of the time, on account of the above, plaintiff has been unable to run the whole or any part of said machinery. If such be the fact, you will allow the plaintiff, as damages for this, the interest on the value of his investment, or any part thereof which plaintiff could not employ or use on account of this failure of defendant, if there was a failure. Further, that if they (the jury) believet he defendant had not blasted out the canal according to his contract in evidence, and the plaintiff had been injured thereby, then the plaintiff was entitled to damages for this, to be estimated by the same rule as above stated."

The Court also charged, that "the defendant insisted that if the plaintiff could not run his machinery, it was not the fault of defendant, but was on account of plaintiff's defective wheel; that the plaintiff was not bound to get the best wheel, but an ordinary one—a common one—not the best; if plaintiff did not get the best wheel, but one that would have answered, that is no defense, if the wheel was not any account, plaintiff cannot recover; if it was such an one as could have been driven with the proper quantity of water, then that is no defense."

To each and all of the foregoing charges defendant's counsel excepted.

The defendant requested, in writing, the following charges:

1st. If the jury believe that the defendant has failed to blast and blow out the canal or race according to their covenants, then the measure of damages for this breach is what it would cost to perform the work; and if the plaintiff has not shown this, he cannot recover for this.

2nd. If the jury believe from the evidence that the eyes of the canal or reservoir were so finished as to furnish and contain water sufficient to propel plaintiff's machinery on lot 11, and if they further believe from the evidence that still there was not, in low water, sufficient to run the machinery, the plaintiff cannot recover for this cause.

3d. That under the deeds in evidence, defendant was not bound, under all circumstances, to furnish the plaintiff with sufficient water to run their machinery, and if they believe the want of water was not occasioned by any defect in the eyes of said canal, the plaintiff cannot recover for this.

4th. That unless the jury believe from the evidence that the plaintiff has performed and kept his covenant to blast and blow out opposite lots 11 and 12, or has shown a sufficient excuse for not so doing, then he cannot recover of defendant for failing to blast out opposite 13, 14 and 15.

5th. That if the jury believe the defendant did, within a reasonable time, blast and blow out the race-way opposite to lots 13, 14 and 15, according to the covenant, and that the eyes in the canal or reservoir were so finished as not to allow any material quantity of water to escape from the canal or reservoir, then the plaintiff cannot recover.

6th. If the jury believe from the evidence that the canal was blasted out opposite lots 13, 14 and 15, in acordance with the covenant before the plaintiff blasted out opposite 12, and that the eyes in the canal were so finished that a small and immaterial quantity of water escaped from the canal, then the plaintiff cannot recover.

7th. If the jury believe that the canal or race opposite lots 13, 14 and 15 was not blasted out in a reasonable time, still, if they believe it was done before plaintiff blasted opposite lot 12, and that it would have been of no benefit to plaintiff to blast out opposite 13, 14 and 15, unless 12 was also blasted out, then plaintiff cannot recover for this failure.

8th. That although the jury may believe that, in low water, the plaintiff could not run more than two-thirds of his machinery, yet, if the jury believe that the canal opposite lot 12 was not blasted out, and that if that had been blasted out and below this had also been blasted out, then the plaintiff could have run all his machinery even in low water, then plaintiff cannot recover for loss in low water.

The Court refused to give any of said charges as requested, and defendant's counsel excepted.

Defendant then requested the Court to charge: "That if the jury believe that the plaintiff furnished his factory with a wheel which was a poor one, and one not calculated to economize water or power, and that other wheels could have been procured that would have performed twice as well, and that it was on this account that plaintiff could not run his machinery in low water, then plaintiff cannot recover for this loss."

The Court charged as requested, and added: "That plain-

tiff was not bound to get the best wheel, but only an ordinary, common one."

To the qualification thus made by the Court, defendant's counsel excepted.

The several rulings and charges of the Court excepted to by defendant are now assigned as error by his counsel.

During the progress of the trial, the plaintiff proposed to prove the capability of the machinery in the factory under a head of water sufficient to run all the machinery ; also, the loss of capacity in consequence of the deficiency of water ; also, that plaintiff had a sufficient number of hands to propel his machinery, which hands they discharged for want of water power sufficient to employ them ; also, the daily loss incurred thereby on the profits which he would have derived from his manufactures, had he been able to run his machinery. Defendant objecting to this evidence, it was rejected by the Court, and plaintiff excepted.

Plaintiff then offered to prove the value of said factory, with a sufficiency of water power throughout the year to propel its machinery, and the value of said factory with the water power in fact supplied. This evidence was also rejected by the Court.

Counsel for plaintiff now assign the two last named rulings of the Court as error. Both bills of exceptions argued together.

WM. DOUGHERTY and R. J. MOSES, for VAN LEONARD.

JOHNSON & SLOAN, and R. W. DENTON, *contra*.

*By the Court.*—LYON, J., delivering the opinion.

1. There is nothing in the first and second grounds of demurrer ; because, if the declaration was defective—and we do not think it was—the objections could have been cured by amendment.

The 3d, 4th, 5th and 6th grounds of demurrer are involved in the charge of the Court as given, and in the refusals to charge on the request of counsel.

2. The witness, Parr, was competent. The fact that he owned an interest in the property did not affect him with interest. The property had been sold at sheriff's sale, as the property of the Howard Manufacturing Company, and Parr

held an interest under the purchaser at that sale. That sale carried with it the covenant of the Water Lot Company to the Howard Manufacturing Company, and would enable the purchaser at such sale to recover for all injuries resulting from a breach after the sale, but the damages resulting to the Howard Manufacturing Company for breaches prior to the sale, did not pass to the purchaser by the sale; therefore the purchaser at sheriff's sale, nor any one holding under him, could have any interest in the recovery in this suit, for this action is for damages resulting from a breach of covenant prior to the sheriff's sale.

3. The objection to the introduction of the deeds of 9th July, 1857, on the ground of discrepancy, was not well considered by counsel. Van Leonard is called in the first, in one place, trustee of the Howard Manufacturing Company, and in the same deed, in another place, trustee of the stockholders of the Howard Manufacturing Company, which shows that the same company was referred to and intended in both cases, and if there was an apparent discrepancy, it explains itself; it certainly did not vitiate the deed. Besides, Van Leonard held the legal title in any event.

We understood the counsel for plaintiff in error, as not insisting upon the objection to these deeds for the want of an order to show that the persons who signed the deeds were authorized to make them, as no plea of *non est factum* had been filed, putting that fact in issue.

The remaining objections to the evidence—and they are numerous, for I believe everything was objected to by defendant's counsel, even to testimony offered by themselves—are involved in the rulings of the Court in his charge to the jury, and may be all considered together. The same may be said of the points of error complained of by the Howard Manufacturing Company in the cross-bill of exceptions brought up by them.

The breaches assigned by the plaintiff in the Court below, in his declarations, were—

1st. That the Water Lot Company did not blast and blow out the race, or waste-way, opposite to lots 13, 14 and 15, to the width of sixty feet, and to the then depth of the raceway opposite to each or any of the other lots, as by the covenants they were bound to do.

2d. That the said company did not finish all the eyes in

said canal or reservoir, in such manner as to furnish and contain in said canal water in sufficient quantity to propel the machinery placed and erected on said lot 11 by the plaintiff, by reason whereof damage resulted.

There was much discussion as to what was the true construction of the covenant in that part on which the second breach is assigned.

4. We think the true interpretation is, that if the canal was completed, and the eyes or gates, at the mouth of the canal were so finished or constructed as to permit the water from the river to flow freely and without interruption into the canal, and the balance of the eyes so finished as to prevent the escape of the water from the canal, except as intended it should, and the race or waste-way, was blasted out— all of which the Water Lot Company covenanted they would do—except as to blasting out the race or waste-way, opposite to lots 11 and 12, which the Howard Manufacturing Company covenanted they would do, that, then, the canal *would* furnish and contain sufficient water to propel the machinery, etc. There was no covenant against general drought or unusual and excessive low stages of the water in the river.

The whole of the questions made upon the pleading, other than what I have disposed of, the evidence and the charge and refusal to charge by the Court, may be reduced to two, for to that were they narrowed in the argument, and they are—

1st. Was it necessary for the plaintiff to aver and prove that they had performed their part of the covenants; that is, to blast and blow out the race or waste-way, opposite to lots 11 and 12 before they could recover against the defendants for their breaches of the covenants by them?

2d. What is the measure of damages for the injuries sustained by plaintiff in consequence of the breaches?

5. Upon the first question we had great difficulty; in fact, were so unfortunate as at last not to be able to agree upon it. The whole difficulty lies in that knotty question, whether the covenants are dependent or independent? If they are dependent; that is, if each depends on the other, the failure of the one annuls and destroys the other. Now, the proof here is, that it would not benefit the plaintiff to blast out the race-way opposite lots 13, 14 and 15, unless the race-way opposite lot 12 was also blasted out, for their machinery is

on lot 11, which is above all of them, and the waste water would be equally poured on their wheel from the obstruction opposite lot 12, as that of 13, 14 or 15, or *vice versa*. If there was nothing between these parties ; that is, if there was nothing in the agreement or deed but this part of the covenant, I should say the covenants were concurrent. To determine what is a proper construction, has always been an extremely vexed question with the Courts. I will, as briefly as possible, state some of the rules that bear on the point, that Courts have laid down to determine whether the covenants are dependent or independent :

" When the agreements go to the whole of the consideration, on both sides, the conditions are dependent, and one of them is a condition precedent to the other. If the agreements go to a part only of the consideration on both sides, and a breach may be paid for in damages, the promises are so far independent." *Par. on Con.*, 2 *vol.*, 189. " Or if this dependence is not mutual, but one of them rests upon the other by a dependence which is not equally shared .by the other ; if that contract upon which this dependence rests, is broken and defeated, the other, by reason of its dependence, is annulled and destroyed also." " But they may be wholly independent, although relating to the same subject, and made by the same parties, and included in the same instrument. In that case, they are two separate contracts. Each party must, then, perform what he undertakes, without reference to the discharge of his obligation by the other party. And each party may have his action against the other for the non-performance of his agreement, whether he has performed his own or not." The mutual covenants must go to the whole consideration on both sides, when the one is precedent to the other, but when they go to a part only, and a breach ·may be paid for in damages, the covenants are independent. The leading case on this point, is of *Boon vs Eyrie*, 1 *H. Blk.*, 273. The plaintiff in that case conveyed to the defendant *the equity of redemption* of a plantation in the West Indies, together with the stock of negroes upon it, in consideration of £500 and an annuity of £160 per annum for life, and covenanted that he had good title to the plantation, was lawfully possessed of the negroes, and that the defendant should quietly enjoy. The defendant covenanted *that the plaintiff well and truly performing all and everything*

on his part to be performed, he, the defendant, would pay the annuity. The action was brought for the non-payment of the annuity. Plea: That the plaintiff was not, at the time of making the deed, legally possessed of the negroes, and so had not a good title to convey. General demurrer to the plea—Lord Mansfield : "The distinction is very clear : When mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other ; but when they go only to a part, when a breach may be paid for in damages, then the defendant has a remedy on his covenant, and shall not plead it as a condition precedent. If this plea be allowed, any one negro not being the property of the plaintiff would bar the action." "So, when it was agreed between C and D, that in consideration of £500 C should teach D the art of bleaching materials for making paper, and permit him, during the continuance of a patent, which C had obtained for that purpose, to bleach materials according to the specification, and C, in consideration of the sum of £250 paid, and the further sum of £250 to be paid by D to him, covenanted that he would, with all possible expedition, teach D the method of bleaching such materials, and D covenanted that he would, on or before the 24th February, 1794, or sooner, in case C should before that time have taught him the art of bleaching such materials, pay to C the further sum of £250. In covenant by C against D, the breach assigned was the non-payment of the £250. Demurrer : That it was not averred that C had not taught D the method of bleaching such materials ; but it was held by the Court that the whole consideration of the agreement being that C should permit D to bleach materials, as well as teach him the method of doing it, the covenant by C to teach was but part of the consideration for a breach, which D might recover a recompense in damages, and C having in part executed his agreement by transferring to D a right to exercise a patent, he ought not to keep that right without paying the remainder of the consideration, because he may have sustained some damage by D's not having instructed him, and the demurrer was overruled. Campbell vs. Jones, 6 T. R., 570 ; Stover vs. Gordon, 3 M. & S., 308 ; Ritchie & Atkinson 10 East, 295 ; Hancock vs. Reddes, Ibid, 555. See also note C., 2 Par. on Con., 41, and cases cited. See also note by Williams to Pordage vs. Cole, 1 Sanders, 319. In this note, which is a very elabor-

ate one, nearly all the English authorities on the subject are collected and cited, and they are very numerous; by an examination of which it will be seen that there are three kinds of mutual covenants that are concurrent and dependent. They are—1st. When two acts are to be done at *the same time;* 2d. When they go to the whole consideration; 3d. When a day is appointed for the payment of money, etc., and the day is to happen *after* the thing which is the consideration of the money, etc.

The cases of mutual covenants that are independent, are of two kinds: one I have named, and the other is, if a day be appointed for payment of money, or part of it, or for doing any other act or thing, and the day *is* to happen, or *may* happen *before* the thing which is the consideration of the money or other thing is to be performed.

Now, let us compare this case with these rules, and see to which class it belongs: There is nothing in the agreement requiring the two acts, which are of the same kind, in the one case, to be done at the same time; there is no dependence upon each other in that respect. The thing to be done by the defendant *may* as well happen *before* the thing to be done by the plaintiff as not; there is no dependence there. The mutual covenants to be performed, which form the subject of controversy, do not go to the whole consideration of the covenant, but to a very small part of the same. There is, therefore, no dependence in any one of the three respects; but they fall directly within each of the two classes of independent covenants. They are, too, within the reason of independent, rather than of dependent covenants. There is no equality in the damage sustained by the plaintiff and defendant, which is a thing greatly looked to, and a very controlling one, and, in my opinion, it is the truest test of all others. For instance, the damage sustained by the defendant in the action is only the cost of blasting out the raceway opposite lot 12, while the damage to the plaintiff is the suspension of one-third part of his machinery for a long space of time, and a total suspension of all his machinery for several months. Besides, there is another breach of the covenant by the defendant, which forms a very serious ground of complaint, and that is the failure to so finish the gates, or eyes, as they are called in the covenant, at the mouth of the canal, that the water could flow freely into the canal and

without interruption. These openings were not only not properly constructed, but there were rocks in the mouth of the canal obstructing the passage of the water.

The most serious difficulty is one that is not reached by any of the rules of construction that I have mentioned, or that is known to the books, so far as I have been able to find, and that is the fact, that it would have done the plaintiff no good to have blasted out the waste-way opposite 13, 14 and 15 until it was blasted out opposite 12. My answer to it, however, is this: That it was unnecessary for the plaintiff to go on and blast out the waste-way opposite lot 12 until he saw that it would avail himself; for if he had gone on to do this work, it would have increased his expenses and damages, and accomplished nothing. And how can this avail the defendant? He has committed the breach of his covenant in two ways, both of which damaged the plaintiff. How can he say that there was no use in my doing this work, as the plaintiff has not done his? The work to be done by the plaintiff may have been a very small matter; it was only one-third of what defendant had to do. But whether the one way or the other; whether my answer is satisfactory or not, the authorities I have referred to are plain and clear, that the covenants are not dependent, but independent, and for the respective breaches action will lie by each, and that reason is unanswerable. And for that reason, we hold that the Court below was right in ruling, that the plaintiff need not aver and prove performance of the condition on his part to be performed in order to entitle him to maintain his action for the breaches of the defendants.

Neither party was satisfied with the rule of damages laid down by the Court. The defendant insisted that if the plaintiff was entitled to recover anything at all, it was only what would have been the cost of blasting, or blowing out the race-way finishing gates at the mouth of the canal, for the free passage of the water, according to his contract; that the plaintiff had the right to go upon the premises and do the work himself, and so prevent such disasters to himself, and it was his own willful neglect not to do so.

The plaintiff, on the other hand, insists that he had a right to recover, not only all that he actually lost by the failure of the defendant to perform his contract, but all that he would have made had he been able to employ all his machinery;

that is, that he was entitled to recover the profits he might or could have made from the use of all his machinery, from which he was prevented by the failure of defendant to comply with his contract. For this purpose he offered proof of the capability of the machinery, under sufficient head of water; also, the loss of capacity by the want of a sufficient head of water, the daily loss sustained in the profits which they would have derived from the employment of all the machinery, and the value of the machinery with a full head of water, and its value with such a head of water as existed.

6. The Court rejected both, holding that neither was the true measure of damages to be recovered, but that the plaintiff was entitled to recover the actual damage sustained, and that, in this case, was the interest on the value of his investment, or such part thereof as he could not employ on account of the failure of defendant, for the time that such part or the whole could not be so employed; for instance, if the whole machinery was idle in consequence, then the plaintiff could recover interest on the whole investment; if there was only a part of the machinery in action for the want of water, then interest on that portion of the investment.

We think the Court adopted the only safe and certain rule of damages that would fit the case. The rule is in accordance with that laid down by this Court in *Coweta Falls Manufacturing Company vs. Rogers*, 19 *Ga.*, 416. What the profits might have been, had the plaintiff been able to employ the whole of his machinery all the time, was a matter purely of speculation, depending on the demand, sales, costs, etc., and was properly rejected.

The profits that are recoverable, are such as are the immediate fruit of the contract, and are independent of any collateral engagement or enterprise entered into in expectation of the principal contract: 2 *Par. on Contract*, 461. Such was the effect of the decision in *Masterson vs. Mayor of Brooklyn*, 7 *Hill*, 61, and other cases to which we have referred. To give a familiar instance: If one agrees to deliver a quantity of bacon at a given day and place for a specified price, and fails, then, whatever profit there is in the transaction at the time when the contract is to be performed, is the measure of damages. That there may be found cases in conflict with this holding, I do not doubt; but the rule once laid down by this Court must be adhered to.

7. Neither was the cost of blasting out the race or waste-way, any criterion for a measure of the damages. The race or waste-way, opposite to lots 13, 14 and 15 belonged to the defendant, and the plaintiff had no right or permission to enter thereon to do that work. To have done so would have been a trespass on his part, to which the law will not expose him to protect the defendant from the performance of this contract.

8. We are induced to think that the Court, in his charge to the jury, considered the defendant as having covenanted against low water in the river, or rather, that his undertaking was to furnish the plaintiff with sufficiency of water to propel his machinery in all events. If so, the Court erred, according to our construction of the covenants, as already explained; but as the proof was very clear, that there would have been sufficient water to run the machinery at all times during the total and partial suspension, had the race-way been blasted out, and the obstructions in the mouth of the canal removed, the error was immaterial. And for these reasons, we affirm the judgment.