### 62398. COMPLETE TRUCKLEASE, INC. et al. v. AUTO RENTAL & LEASING, INC.

CARLEY, Judge.

On May 16, 1979, appellant-Complete Trucklease (Complete), as lessee, entered into a written agreement with appellee-Auto Rental & Leasing, as lessor. This contract, denominated a "vehicle lease and service agreement," provided that appellant would lease trucks from appellee and that appellee would in turn "furnish all mechanical maintenance, parts and labor, including reasonable preventive maintenance and repairs, lubricants and grease, cold weather protection and road service necessary to keep the vehicle in good operating condition . . ." Appellant-Samples, the president of the corporate appellant, executed this agreement and, in his individual capacity, guaranteed appellant's performance thereunder.

Subsequently a dispute arose between the parties. Appellee contended that it was not receiving proper payment under the agreement and appellant-Complete contested liability under the agreement for some charges and asserted that proper credit for payment had not been given as to others. Apparently, appellant-Complete also began to experience mechanical problems with the trucks which were not resolved to their satisfaction. On September 25, 1979, appellee informed appellant-Complete by certified mail that it was in default of payments under the agreement

in the amount of "$52,279.13 as of September 15, 1979." Appellee's letter warned that it would "be forced to take the action necessary to recover the equipment you have leased from us as well as the monies involved" unless the default were cured in five days. Despite this warning, appellant-Complete continued to operate the trucks and it was not until early December 1979 that the first truck was returned to appellee's possession and it was not until the middle of December that all the leased vehicles were returned. On December 18, 1979, appellee informed appellant-Complete that it was exercising its election under the agreement to treat the lease as cancelled. Also, appellant-Complete was informed by the letter of December 18, 1979, that unless payment were made within fifteen days according to the contract terms relevant to cancellation suit would be instituted.

When the parties were unable to resolve the dispute appellee instituted the instant action against appellants for $75,366.31, the amount alleged to be owing under the provisions of the lease. Appellants answered, denying the material allegations of the complaint and raising by way of defense failure of consideration and appellee's breach of its duty under the contract.

The case was tried before a jury. A verdict in the amounts of $45,000 was returned for appellee against both appellants. Appellants appeal from the entry of a joint and several judgment against them in that amount.

1. Appellants first assert that the trial court erroneously excluded the testimony of one of their expert witnesses concerning the "customs" of the vehicle leasing businesses. Suffice it to say that our review of the witness' proffered testimony demonstrates that it had nothing whatsoever to do with "business customs" or the general course of conduct of the business of truck leasing. At most the testimony dealt with the general economic realities underlying a lease-service contract and how the terms of such an agreement could be manipulated by the lessor to increase his short-term profit. Testimony that *if* the lessor breached his contractual obligation to service his own rented vehicles his short-term profit would be thereby increased is not evidence of a "custom" of the trade.

Moreover, even assuming that the proffered testimony was evidence of a business "custom," it was not reversible error to exclude it in this case. In the first instance, the contract between the parties was clear and unambiguous and no issue was presented concerning the proper interpretation of the language of the agreement. The sole issue was whether appellee and/or appellants were in breach of the contract's unambiguous terms. See generally *Brunswig v. East Point Milling Co.,* 11 Ga. App. 9 (2) (74 SE 448) (1912). And, assuming that the testimony was intended to demonstrate a possible business

"motive" for appellee to breach its service obligation under the contract, in view of the following statement by the witness the only party prejudiced by its exclusion was probably appellee: "By not providing the maintenance [the lessor uses in calculating the rental] rate [the lessor] will obviously bring more money into the bottom line. That's a short-term profit because eventually the maintenance [the lessor is] not performing — *the preventive maintenance category will catch up and cost [the lessor] twice as much two years down the road* in breakdown maintenance away from [the lessor's] base of operation." (Emphasis supplied.) Moreover, the transcript demonstrates that the substantial substance of the witness' excluded testimony insofar as it was relevant, was merely cumulative of evidence already before the jury. See generally *Paulk v. Thomas,* 115 Ga. App. 436 (1) (154 SE2d 872) (1967). The trial court did not err in excluding the proffered testimony.

2. Appellants urge that the trial court erred in "failing to instruct the jury pursuant to appellant's affirmative defenses that appellee's material breach of dependent covenants in the parties' motor vehicle lease and service agreement excused appellants' performance of the agreement." While appellants do not specify which of their requests to charge they contend were erroneously refused by the trial court, apparently this enumeration addresses refused instructions on Code Ann. §§ 20-109, 20-110, 20-904, 20-1104.

Appellants essentially assert that their requests to charge on their "affirmative defense" were authorized by the evidence that appellee had not entirely fulfilled its obligation under the agreement to make the necessary repair and maintenance work on the lease vehicles. According to appellants, this evidence of appellee's breach of the agreement authorized a charge that appellee would not be entitled to enforce the contract under the legal principle that "the breach of one [dependent covenant] is a release of the binding force of all dependent covenants." Code Ann. § 20-109. While this is a correct principle of law, the evidence in the instant case did not authorize such a charge. "The general rule is that 'mutual covenants must go to the whole consideration on both sides, where the one is precedent to the other; but when they go to a part only and a breach may be paid for in damages, the covenants are independent.' [Cits.]" *Jordan Realty Co. v. Chambers Lumber Co.,* 176 Ga. 624, 629-630 (168 SE 601) (1932). " 'The distinction is very clear; When mutual covenants go to the whole of the consideration on both sides, they are mutual conditions, the one precedent to the other; but when they go only to a part, when a breach may be paid for in damages, then the defendant has a remedy on his covenant, and shall not plead it as a condition precedent . . .' " *Water Lot Co. v.*

*Leonard,* 30 Ga. 560, 574 (1860). It is readily seen that the whole consideration in the instant case was appellee's covenant to lease vehicles to appellants *and* to maintain and repair those vehicles. It is undisputed that appellants received and used the trucks for the period of time underlying the instant suit. Nor does the evidence demonstrate that there was a complete and total breach of the covenant to repair and maintain. Thus, a breach, if any, by appellee of its covenant to maintain and repair the trucks would not go to the whole consideration of the agreement and cannot be asserted by appellants as the breach of a dependent covenant which entirely excuses their performance under the contract. Appellee was entitled to recover on the basis of such of its consideration, if any, as passed to appellants. See *Water Lot Co.,* 30 Ga. 560, 572 (5), supra. In short, appellants' evidence raised the defense of failure of consideration and recoupment and their remedy was "to assert a claim for damages at the proper time and in the proper manner, or to resist payment of the balance of the indebtedness in money, in case of suit therefor." *Jordan Realty Co.,* 176 Ga. at 630, supra. The trial court charged on recoupment and the jury obviously found for appellants on this issue by returning a verdict some $30,000 less than the amount appellee claimed as owing under the express terms of the lease. We find no error in the trial court's instruction to the jury with regard to appellants' "affirmative defenses."

3. Over appellants' objection that it was irrelevant and immaterial to the issues in the instant case, appellee's president was allowed to state on rebuttal that appellee had "a very fine system generally" and to give the names of other of its lessees who used appellee's maintenance program and the length of time they had been appellee's customers. The witness also testified: "I feel that we would not have kept these accounts if we had not provided the type of service they were looking for."

Appellants' objection to this testimony was well founded. See *Mendel v. Converse & Co.,* 30 Ga. App. 549, 559 (40) (118 SE 586) (1923). "[T]estimony as to what [appellee] had done in the past and on other jobs has little bearing on what happened in the transaction in question. [Cit.]" *Warren v. Gray,* 90 Ga. App. 398, 400 (83 SE2d 86) (1954). " 'In a controversy between two persons regarding a given subject matter, evidence as to what occurred between one of them and a third person with reference to a similar, though entirely distinct, transaction is irrelevant. ' [Cit.]" *Dennis v. Dennis,* 227 Ga. 164, 166 (179 SE2d 238) (1971).

However, "[e]vidence which is irrelevant will not always require reversal, since prejudice also must appear." *Kates v. State,* 152 Ga. App. 29, 31 (262 SE2d 221) (1979). Considering that the irrelevant

testimony, which was neither "lengthy" or "technical," was in rebuttal of appellants' attack upon the quality of appellee's service, we are unable to say that the case must be reversed because of the witness' "opinion" that his company had a generally good service program, which opinion was based upon the fact that appellee had retained certain named customers. See generally *Brooks v. Steele,* 139 Ga. App. 496, 497 (1) (229 SE2d 3) (1976). In view of the extensive attack made by appellants upon appellee's service record as demonstrated by the transcript, we find that no prejudice to their defense requiring reversal resulted from the passing irrelevant rebuttal testimony concerning appellee's other customers. *Brooks,* 139 Ga. App. 496, supra.

*Judgment affirmed. Deen, P. J., and Banke, J., concur.*

DECIDED DECEMBER 2, 1981.

*Jerrold W. Hester, Gerald B. Kline,* for appellants.
*A. Mims Wilkinson,* for appellee.