A08A0669, A08A0670. BEAULIEU GROUP, LLC v. S&S MILLS, INC.; and vice versa.

(664 SE2d 816)

PHIPPS, Judge.

Beaulieu Group, LLC, a carpet manufacturer, entered into an agreement with S&S Mills, Inc., under which S&S was to tuft yarn and backing supplied by Beaulieu and then return the tufted yarn to Beaulieu so that Beaulieu could turn it into finished carpeting. Under the agreement, Beaulieu was obligated to pay S&S a certain

---

amount for each square yard of tufted yarn. And in addition to supplying Beaulieu with the tufted yarn, S&S was required to return to Beaulieu unused yarn and backing.

Beaulieu brought this suit against S&S, charging S&S with breach of contract and conversion because it had not returned unused yarn and backing, but rather had sold it to third parties in breach of its agreement with Beaulieu. S&S answered the complaint, charged Beaulieu with breach of contract by failing to timely pay for tufted yarn that S&S had returned to Beaulieu, and counterclaimed for damages for the unpaid goods and services as well as attorney fees under OCGA § 13-6-11. The court granted S&S's motion for directed verdict on Beaulieu's complaint, on the ground that Beaulieu's breach of its duty to pay S&S for tufted yarn bars Beaulieu from recovering for breach of S&S's duty to return unused yarn and backing. In Case No. A08A0669, Beaulieu appeals, and under the circumstances of this case, we disagree and reverse. In Case No. A08A0670, S&S cross-appeals the trial court's grant of a motion in limine brought by Beaulieu. In that case, we find no error and affirm.

At trial, Beaulieu's production planner, Gaye Henderson, testified on direct examination that during performance of the parties' agreement, S&S began to refuse to return tufted yarn to Beaulieu because of unpaid invoices that had been submitted by S&S to Beaulieu for the tufted yarn. During cross-examination, S&S's attorney elicited a concession from Henderson that it was not unreasonable for S&S to refuse to return these goods until it had received payment. And Beaulieu's accounts payable supervisor, Melissa Barnes, acknowledged on cross-examination that Beaulieu had begun making untimely payments of invoices. But testimony given by David Park, Beaulieu's Bridgeport, Alabama plant controller, showed without dispute that S&S also failed to return to Beaulieu yarn and backing valued at $209,996.44 even though Beaulieu owed S&S only $3,110 for a single unpaid invoice. Park further testified that Beaulieu did not pay the $3,110 invoice because S&S owed it far more for the unreturned raw materials.

After the court granted S&S's motion for directed verdict, S&S immediately dismissed its counterclaim without prejudice. Beaulieu later filed a motion asking the trial court to grant it a new trial and to reconsider and vacate its grant of a directed verdict in favor of S&S. The trial court denied Beaulieu's motion for new trial, concluding that Henderson's testimony established that S&S's duty to return unused yarn and backing was conditional upon Beaulieu's obligation to pay S&S for services rendered, and that Barnes's and Park's testimony showed that Beaulieu did not make timely payment of invoices submitted by S&S and failed to pay a $3,110 invoice.

## Case No. A08A0669

1. The court erred in granting S&S's motion for directed verdict.

"The direction of a verdict is proper only where there is no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[1] Therefore,

> "[a] motion for directed verdict should not be granted where there exists even slight material issues of fact. . . . The appellate review of directed verdicts is based upon the 'any evidence' rule to support the case of the nonmoving party; when there is 'any evidence,' a directed verdict must be reversed."[2]

> A contract may be absolute or conditional. In an absolute contract, every covenant is independent and the breach of one does not relieve the obligation of another. In a conditional contract, the covenants are dependent upon each other and the breach of one is a release of the binding force of all dependent covenants.[3]

The distinction between an absolute contract containing independent covenants and a conditional contract containing dependent covenants is illustrated by *Complete Trucklease v. Auto Rental & Leasing*[4] and *Burnham v. Cooney*.[5]

The contract in *Complete Trucklease* was a lease of trucks along with an agreement by the lessor to service and maintain them. When sued for nonpayment of amounts owing under the lease, the lessees claimed that the lessor's breach of the service agreement excused their nonperformance. *Complete Trucklease* recognized that

> [t]he general rule is that mutual covenants must go to the whole consideration on both sides, where the one is precedent to the other; but when they go to a part only and a breach may be paid for in damages, the covenants are independent [in which case] the defendant has a remedy on

---

[1] *Teklewold v. Taylor*, 271 Ga. App. 664, 665 (610 SE2d 617) (2005) (citation and punctuation omitted).

[2] Id. (citation omitted).

[3] OCGA § 13-1-7 (a).

[4] 160 Ga. App. 568 (288 SE2d 75) (1981).

[5] 265 Ga. App. 246 (593 SE2d 701) (2004), aff'd, *Cooney v. Burnham*, 283 Ga. 134 (657 SE2d 239) (2008).

his covenant[ ] and shall not plead it as a condition precedent. . . .[6]

Although there was evidence in *Complete Trucklease* that there were leased trucks which the lessor had failed to service and maintain, it was undisputed that there were also trucks which the lessees received and used for a period of time. Under these circumstances, this court held that the lessor's breach of its covenant to maintain and repair the trucks would not go to the whole consideration of the agreement, that it could not be asserted by the lessees as the breach of a dependent covenant which entirely excused their performance under the contract, and that the lessees' remedy was "to assert a claim for damages at the proper time and in the proper manner, or to resist payment of the balance of the indebtedness in money, in case of suit therefor."[7]

In *Burnham*,[8] a client who was sued for nonpayment of legal fees charged the attorney with breach of the fee agreement by failing to send him billing statements. The lawyer argued that the client's complaint about nonreceipt of billing statements constituted a claim for recoupment of damages and not a defense to the complaint.

> [R]ecoupment is a right of the defendant to have a deduction from the amount of the plaintiff's damages for the reason that the plaintiff has not complied with the cross-obligations or independent covenants arising under the contract upon which suit is brought. It implies that plaintiff has cause of action, but asserts that defendant has counter cause of action growing out of breach of some other part of same contract on which plaintiff's action is founded, or for some cause connected with contract.[9]

Because the client claimed that he would have terminated the lawyer's services if the billing statements had been sent, we rejected the lawyer's argument and held that the client was asserting a defense based on the lawyer's breach of a dependent obligation.

Under the totality of the evidence, Henderson's concession — that it was not unreasonable for S&S to refuse to return goods until it had received payment from Beaulieu for submitted invoices — provides an inadequate basis to support the trial court's conclusion that Beaulieu's obligation to pay S&S for tufted yarn and S&S's

---

[6] 160 Ga. App. at 570-571 (citations and punctuation omitted).
[7] Id. at 571 (citation and punctuation omitted).
[8] Supra.
[9] 265 Ga. App. at 249 (3) (punctuation and footnotes omitted).

obligation to return unused yarn and backing were dependent covenants. To begin with, the evidence establishes only that Beaulieu failed to pay S&S for one $3,110 invoice after making untimely payment of other invoices. Moreover, the parties have not cited any evidence of a written agreement between them. The parties' testimony concerning the agreement leads to the conclusion that Beaulieu's obligation to pay S&S for tufted yarn and S&S's obligation to return unused yarn and backing were independent covenants like those in *Complete Trucklease* and unlike the dependent covenants in *Burnham*. If Beaulieu's failure to make payment or timely payment for tufted yarn had resulted in a complete failure of consideration, S&S might have been authorized to refuse to return any unused yarn and backing to Beaulieu. But the evidence at trial — that the value of the unused yarn and backing retained by S&S far exceeded any amounts Beaulieu owed S&S for untimely payment or nonpayment of invoices — showed only a partial failure of the consideration due S&S. Thus, as recognized in *Complete Trucklease*, a jury would be authorized to find that Beaulieu's breach did not excuse S&S's breach (although a jury might be authorized to award S&S attorney fees if it found that Beaulieu's breach caused the matter to end in litigation). Consequently, the trial court erred in granting S&S's motion for directed verdict.

### Case No. A08A0670

2. We find no merit in S&S's complaint in its cross-appeal concerning the trial court's grant of Beaulieu's motion in limine.

At the beginning of the trial, Beaulieu brought a motion in limine to prohibit S&S from claiming that it had what is known as a laundryman's lien on the unused yarn and backing and that it had sold the yarn and backing pursuant to its lien rights. Agreeing that S&S had no such lien, the court granted the motion.

The laundryman's lien is created by Part 7 of Article 8 of Chapter 14 of Code Title 44. Part 7, comprised of OCGA §§ 44-14-450 through 44-14-456, is titled, "Laundries, Cleaners, and Tailors." OCGA § 44-14-450 grants "[a]ll persons, firms, or corporations engaged in the business of laundering, cleaning, tailoring, altering, repairing, or dyeing clothing, goods, wearing apparel, shoes, carpets, rugs, or other such articles" a lien upon "the articles laundered, cleaned, tailored, altered, repaired, or dyed" for the agreed price or the reasonable value of their services. To satisfy the lien, OCGA § 44-14-453 authorizes the service provider to sell the goods or articles remaining in its possession for a period of 90 days after nonpayment subject to the requirements of OCGA §§ 44-14-454 and 44-14-455. In Georgia, lien laws are strictly construed as being in

derogation of the common law.[10]

At trial, S&S sought to show that the tufting of yarn constitutes the altering of carpets and thus falls within the scope of OCGA § 44-14-450. To support this claim, S&S submitted evidence that tufting is a process whereby yarn is attached to backing and then, when necessary, trimmed to conform to the configuration of the backing. Strictly construing the statute, however, the court was authorized to find from the evidence that the tufting of the yarn constitutes an initial manufacturing stage in which yarn and backing are turned into unfinished carpeting material and that, in tufting the yarn, S&S was not making alterations to carpet. The trial court thus did not err in granting Beaulieu's motion in limine on the ground that the laundryman's lien is inapplicable here. And even if the lien statute were applicable, OCGA § 44-14-455 requires the proceeds of any sale made under OCGA § 44-14-453 (a) to be applied first to the payment of the lien and any residue to be paid on demand to the owner of the goods sold. Thus, it does not appear that application of the lien would materially affect the outcome of this case.

*Judgment affirmed in Case No. A08A0670. Judgment reversed in Case No. A08A0669. Barnes, C. J., and Johnson, P. J., concur.*

DECIDED JULY 3, 2008.

*Hunton & Williams, Brooke F. Voelzke, Matthew J. Calvert, Benjamin F. Johnson IV*, for appellant.
*Robert G. McCurry*, for appellee.

---

[10] *Ellis, Funk, Goldberg, Labovitz & Dockson, P.C. v. Kleinberger*, 235 Ga. App. 360, 361 (1) (509 SE2d 660) (1998).