THE CLEVELAND NATIONAL BANK *v.* THE BURROUGHS LAND CO. ET AL.

*Parties — Actions in rem and in personam — Attachment — Bonds — Non-resident owner — Ohio bank negotiating sale — Suit by judgment creditor — Sections 11262, 11292, 11297, 11850 and 11851, General Code.*

Richardson, a resident of Texas, and the owner of a railway in Texas, entered into an agreement with Hazzard, of Cleveland, Ohio, by which Richardson agreed to sell and Hazzard agreed to buy said railway. As security for the performance of the contract, Richardson obtained from Hazzard thirteen bonds of the Brooklyn Heights Cemetery Association of Cleveland. There was a breach of this contract by both parties and Richardson sold said bonds to McGowan, a resident of Texas, who arranged for a sale of the bonds in Cleveland. In order to consummate the sale McGowan forwarded the bonds through the San Antonio National Bank to the Cleveland National Bank to be delivered to the purchasers upon the payment of the purchase price. After the alleged breach of the contract, The Burroughs Land Com-

pany began an action against Hazzard in Cleveland and garnisheed the bonds in the hands of The Cleveland National Bank as the property of Hazzard. The Land Company then instituted action against The Cleveland National Bank to subject the bonds to the payment of the judgment against Hazzard. The bank filed a motion to dismiss said action for the reason that McGowan was a necessary party and was a non-resident, which motion was overruled. Summons was served upon McGowan in Texas, although he was not a party defendant. A demurrer to said petition was sustained as to McGowan. Upon final hearing the bonds were determined to be the property of Hazzard and were ordered delivered to the sheriff to be sold for the purpose of paying said judgment against Hazzard. *Held:*

1. That in order to determine the ownership of the bonds it was necessary to adjudicate the controversy between Richardson and Hazzard involving rights and obligations arising out of the contract for the purchase of the railroad, and the court below should have dismissed the action without prejudice, under Section 11262, General Code, and for want of jurisdiction and of necessary parties.

2. Sections 11850 and 11851, General Code, relating to disposition of attached property and proceedings against a garnishee, do not authorize a plaintiff to convert an action *in personam* into an action *in rem* by electing to claim the answer of the garnishee unsatisfactory.

3. Section 11297, General Code, authorizing personal service outside of this state, should be construed with reference to Sections 11262 and 11292, General Code, relating to absent parties and providing for service by publication; and Section 11297 can not be invoked unless the party sought to be served is a party defendant to the action.

(Decided May 7, 1917.)

ERROR: Court of Appeals for Cuyahoga county.

*Messrs. Cook, McGowan & Foote,* for plaintiff in error.

*Messrs. White, Crosser & Curtis* and *Mr. George L. Dake,* for defendants in error.

LIEGHLEY, J.   The parties were in reverse order below and will be designated here as they stood below.

On June 7, 1912, one Asher Richardson, a resident of Asherton, Texas, and the owner of a railway in Texas about 31 miles in length, entered into an agreement with W. W. Hazzard, of Cleveland, Ohio, by the terms of which Richardson agreed to sell and Hazzard agreed to buy said railway for the sum of $250,000.   It was further agreed as part of the consideration that said Hazzard would construct an extension of about 10 miles to a place known as Carrizo Springs.   Also it was further agreed in said contract that said Richardson would provide the right of way and secure subscriptions to the extent of $40,000 from the residents of Carrizo Springs by way of bonus for the extension of said road. Thereafter it is claimed that Richardson provided a certain right of way upon which Hazzard refused to construct said extension; also that Hazzard sent his engineer to the scene and surveyed and selected another and different right of way for said extension, which Richardson refused to provide and pay for.

Richardson succeeded in obtaining subscriptions from the residents of Carrizo Springs to the amount of about $25,000.   Richardson agreed in the event of failure to procure the sum of $40,000 in subscriptions that he would be obligated to the extent of $30,000 as security for the securing of the same, and Richardson did furnish this guaranty.

After the execution of the contract, and before Richardson seemed ready to proceed in the acquisition of a right of way or the soliciting of bonus money-subscriptions, he insisted upon and obtained from Hazzard a promise to indemnify or secure Richardson to the extent of $10,000 that Hazzard would carry out the terms of the contract agreed upon by him to be performed, and in and about the furnishing of said security of $10,000 Hazzard placed in the hands of Richardson thirteen bonds of the Brooklyn Heights Cemetery Association, of Cleveland, Ohio, which bonds are involved in this lawsuit.

A time limit was placed in the contract for the securing of said right of way and bonus money-subscriptions, and also for the construction of the extension, both of which time limits for performance were eventually extended.

Finally the parties to said contract absolutely disagreed and locked horns on the question of the right of way to be selected upon which to construct the extension, Richardson refusing to buy and provide the one selected by Hazzard, and Hazzard refusing to construct the extension upon the one provided by Richardson.

It is quite certain that at this time a right of action arose for the breach of said contract in favor of one or the other party to said contract. Arising out of an express contract, it was necessarily a purely personal one, and of the class designated *in personam.*

On June 1, 1913, Richardson claiming that Hazzard breached the contract and had forfeited his right to the cemetery bonds, thereupon sold

said bonds to one Floyd McGowan, a resident of San Antonio, Texas, who proceeded to arrange for the sale of the same to parties in Cleveland, Ohio. In order to consummate the sale McGowan forwarded the bonds through The San Antonio National Bank to The Cleveland National Bank, to be delivered to the purchasers upon the payment of the purchase price.

On November 15, 1913, The Burroughs Land Company, an Illinois corporation, an entire stranger to the contract, began an action against W. W. Hazzard et al., in the common pleas court of Cuyahoga county, being cause No. 136792, in which it claimed that said W. W. Hazzard was its debtor, and garnisheed said cemetery bonds in the hands of The Cleveland National Bank, claiming that said bonds were the property of Hazzard. Said land company obtained a judgment against Hazzard in the sum of $6,797.50. The Cleveland National Bank in said action admitted the possession of the bonds, but did not admit that said bonds were the property of Mr. Hazzard, asserting instead that the bonds came to it from The San Antonio National Bank and were represented to be the property of one Floyd McGowan.

Thereafter the Burroughs Land Company brought this action directly against The Cleveland National Bank, pursuant to statute, on the ground that the answer of the bank in the first case was unsatisfactory, and alleging that the bonds were in fact the property of Hazzard, and asking that the same be subjected to the payment of the judgment theretofore obtained against Hazzard. The bank filed a motion to dismiss the action for the reason

that McGowan was a necessary party and was not in court, and supported said motion with the affidavit of Floyd McGowan, who swore therein that he was a *bona fide* resident of the state of Texas and was at that time the legal owner of the bonds in question, and that these bonds were sent to The Cleveland National Bank by The San Antonio National Bank, as his agent, for the sale of the same and the collection of the cash in payment therefor; also by the affidavit of T. D. Anderson, cashier of The San Antonio National Bank, setting forth a corroboration of the facts sworn to by McGowan, and further setting forth details and correspondence tending to show that theretofore and previous to the beginning of the first lawsuit *bona fide* negotiations had been in progress for the sale of said bonds to Cleveland parties, and also that the bonds were received on account of Floyd McGowan by The San Antonio National Bank and had been forwarded by it to The Cleveland National Bank in the usual course of business.

Although no counter affidavits were filed by plaintiff this motion was overruled, and plaintiff was given leave to make Floyd McGowan a party defendant.

The plaintiff filed no pleadings setting forth McGowan's connection with the case, and took no steps to make him a party defendant, other than to have a summons issued and served upon said McGowan in the city of San Antonio, Texas, with a copy of the petition. The court had ordered theretofore the plaintiff to give notice to claimants to the property, and in pursuance thereof the

plaintiff also caused a summons to be issued to The San Antonio National Bank, which with a copy of the petition was also served upon said bank at San Antonio, Texas.

Thereupon McGowan, appearing only for the purpose, demurred to the petition, on the ground that the court had no jurisdiction over him, which demurrer was sustained, and thereby he was no longer a party to said lawsuit. The Cleveland bank also demurred on the ground that the petition did not state facts sufficient to constitute a cause of action against it, which demurrer was over-ruled, whereupon the bank filed its answer setting forth two defenses, the first being a general denial, and the second alleging that the bank held the bonds as agent of Floyd McGowan; that said McGowan was a nonresident of Ohio and would not be bound by the judgment of the court; and that, accordingly, the bank would not be protected by any order which the court made.

Upon final hearing of the action in the lower court the bonds were determined by the court to be the property of Hazzard and were ordered delivered to the sheriff to be sold for the purpose of paying said judgment against Hazzard, from which holding error is prosecuted to this court.

Plaintiff claims authority for this action from the following sections of the General Code:

"Sec. 11850. If the garnishee appears and answers and on his examination it be discovered that at, or after, the service of the order of attachment and notice upon him, he was possessed of *property of the defendant*, and was indebted to him or either, the court may order the delivery

of such property, and the payment of the amount owing by him, into court or either; or it may permit the garnishee to retain the property, or the amount owing, upon his executing a bond to the plaintiff, by sufficient surety, to the effect that the amount will be paid or the property forthcoming, as the court directs."

"Sec. 11851. If the garnishee fails to appear and answer, or if he appears and answers, and his disclosure is not satisfactory to the plaintiff, or if he fails to comply with the order of the court to deliver the property and pay the money owing into court, or to give the bond required in the next preceding section, the plaintiff may proceed against him by civil action. Thereupon such proceedings may be had as in other actions. Judgment may be rendered in favor of the plaintiff for the amount of *property and credits of the defendant* in possession of the garnishee, for what may appear to be owing by him to the defendant, and for the costs of the proceedings against the garnishee."

Notwithstanding the fact that the Cleveland bank, as garnishee, answered in the former suit that the bonds came to it through its correspondent, The San Antonio National Bank, and that one Floyd McGowan claimed to be the owner thereof, the plaintiff claimed that the answer of the garnishee was *unsatisfactory,* and by virtue of that claim urged warrant for this action on the ground that said answer was unsatisfactory. Can the election of the plaintiff to claim the answer in question to be unsatisfactory to it, which answer directly advised the court of claimed ownership in another, *alone* give the right to plaintiff to try a

lawsuit, arising out of said breached contract, purely personal in character, in the Ohio courts as an action *in rem,* as claimed by the land company, which as an action *in personam* by reason of service could only be tried in the Texas courts at the instance of Hazzard or his creditor claiming to stand in his shoes? And that, too, in the face of positively asserted ownership of these bonds in another, the bonds being shown to be merely incidental to said · contract; and Richardson not a party at any time!

Simply because these bonds, which like all others of like kind are transferable in the usual course of business from day to day and are clothed with *quasi*-negotiability at least (*P., C., C. & St. L. Ry. Co.* v. *Lynde et al.,* 55 Ohio St., 23), were at one time in the hands of Hazzard, and at the time of the former suit were found in the possession of the defendant, it is sought to make of this situation an action *in rem* by attaching them, and for the reason perhaps that thereby Hazzard and his successors need not go to Texas to litigate his rights under the contract. Hazzard was a party to the first lawsuit as well as a party to this one; whether by procurements, or in the exercise of diligence on the part of the land company to obtain satisfaction of its claim, is immaterial. If the court was not advised in the former suit of the true character of the matters before it, it certainly was advised in this lawsuit, by the affidavits and answer of the bank, that in order to determine the ownership of said bonds it became necessary to try the lawsuit between Richardson and Hazzard, involving rights and obligations arising out

of the contract for the purchase of said railroad, which rights and obligations were purely personal and constituted an action *in personam.*

It is urged by plaintiff that this is an action *in rem* and that all actions in attachment or garnishment are actions *in rem,* and that this court has jurisdiction so long as the plaintiff causes all alleged claimants to the property to be notified wherever those claimants may be. In pursuance thereof The San Antonio National Bank and McGowan were notified in the manner above stated, and by reason thereof jurisdiction of the common pleas court to finally determine the ownership of the bonds was claimed. Richardson, and whatever rights he had, if any, arising out of the breached contract, was entirely forgotten. Although notified by summons served in Texas, the court dismissed McGowan from the case for the express reason that it had no jurisdiction over him; then proceeded to determine, by looking into a contract to which he was not a party, that he did not own the bonds. If McGowan was not a party defendant, then Section 11292, providing for service upon a defendant by publication, could not apply to him, and his rights could not be decided by virtue thereof. Plaintiff now claims that jurisdiction of McGowan was acquired by compliance with Section 11297, General Code. But even to invoke that section the party must be a party defendant under Section 11292, General Code. Said section should be construed with reference to Sections 11292 and 11262, General Code. Many authorities cited are not in point, for the reason

that the statutes in other states differ from those in this state.

Let us suppose that The Cleveland National Bank, upon learning that Hazzard or the land company who claims to stand in the shoes of Hazzard asserted ownership of said bonds, had decided it to be advisable under the circumstances to go into the common pleas court and interplead, saying to the court, there are two claimants for this property and we are unable or we do not care to assume the responsibility of determining the true owner, would the court have jurisdiction to determine the ownership as between Hazzard or the land company and McGowan? The supreme court of Ohio has answered this question in the negative. See *Cross* v. *Armstrong,* 44 Ohio St., 613. The court would have no jurisdiction of the funds for the reason that McGowan was a resident of Texas, and it could not acquire jurisdiction of him by any process known to our law.

In this matter it clearly appears from the answer of The Cleveland National Bank and the affidavits of The San Antonio National Bank and of McGowan, that in order to determine the ownership of these bonds the relative personal rights of Hazzard and Richardson must be litigated. If this fact be true, can the land company, by the claim that the answer of the Cleveland bank was unsatisfactory in the former case, thereby convert the entire situation into an action *in rem?* The law is well settled that in actions *in rem,* if the court has jurisdiction of the property, it has a right to determine the status thereof. In such an action process may be served on the thing itself, and by such

service and by making proclamation the court is authorized to act. But where rights that are purely personal are to be determined, the parties whose rights are affected are entitled to notice, and by process authorized by law. A discussion of the subject-matter of actions *in rem* and *in personam* may be found in the case of *Cross* v. *Armstrong, supra,* at page 623.

McGowan purchased these bonds by contract legal in form, at least, from one who had the legal possession thereof, to-wit, Richardson. Hazzard is the person who contracted with Richardson, who went to Texas for the purpose, who placed the bonds in the hands of Richardson, and Hazzard is one of the parties to the contract which is claimed to be breached. In the absence of a claim of fraud or perjury on the part of McGowan and the banks, should McGowan's title to said bonds be disturbed by the conclusion of a court in Ohio undertaking to determine the relative rights of Hazzard and Richardson, one of whom is not even a party to this lawsuit and to whom no notice of this litigation was given? If so, what is the position of The Cleveland National Bank in this matter, of The San Antonio National Bank, of McGowan, or Richardson? Are the rights of these parties to be concluded by an action of an Ohio court in their absence? Under the circumstances of this case we think not. *Freeman* v. *Alderson,* 119 U. S., 185, 187; 2 Black on Judgments (2 ed.), Sections 793 and 794; 2 Shinn on Attachment and Garnishment, Sections 671 and 672; 20 Cyc., page 1081, and *Looney* v. *Pope,* 148 S. W. Rep., 1170.

It certainly can not be claimed that to require Hazzard, or his creditor, who claims to stand in his shoes, to go to Texas, where jurisdiction of the parties may be obtained, to litigate the relative rights arising under the contract, is a great hardship to impose on him. He contracted there, and there the subject-matter of his contract is located, and the party with whom he contracted is there. Neither party to this situation can well claim to be a favorite in an Ohio court, in view of the circumstances.

Section 11262, General Code, provides as follows:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights. When such determination can not be had without the presence of other parties, the court may order them to be brought in, or dismiss the action without prejudice."

The rule in equity is substantially the same as that provided expressly for in the above section of the General Code.

"Where a necessary and indispensable party as here defined is out of the jurisdiction of the court, or for some other reason can not be brought before the court, the court can not proceed, but must dismiss the bill, and the complainant is remediless, for the suit is unavoidably defective. The principle upon which the rule as to indispensable parties is based is fundamental and underlies the administration of justice in all courts of equity. It is that no proceedings shall take place with respect to the rights of any one, except in

his presence, or at least without affording him an opportunity to be heard." 15 Ency. of Pl. & Pr., 615.

From the same authority, at page 611:

"This class includes all persons who have an interest in the controversy of such a nature that a final decree can not be made without either affecting their interest or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience."

*Barr* v. *Chapman,* 3 C. D., 36, 38;. *Swett* v. *The Mutual Bene. Life Ins. Co.,* 14 C. C., N. S., 100, affirmed 83 Ohio St., 470, and *Penn* v. *Hayward,* 14 Ohio St., 303.

We think that this is such a case as is comprehended within the above section of the General Code and the authorities last above cited. The facts of this particular case are such that while it may be characterized as an action *in rem* it so far partakes of an action *in personam* that this court could not do justice to all parties in interest by attempting to adjudicate the rights arising under the alleged breached contract, made necessary, as admitted, in order to determine the ownership of said bonds.

It is true as urged that the court has jurisdiction in actions *in rem,* notice being given to all claimants pursuant to statute, to determine the status of the property and the true ownership thereof. But we are of the opinion, and so decide, that in such a case as this, where bonds of the kind involved here are the subject-matter of the so-called action *in rem,* and the ownership thereof

can only be determined by a full and exhaustive trial of an action *in personam,* which action exists between parties some of whom are without the jurisdiction of the court, such an action *in rem* is so qualified and modified as to bring it within the class of cases contemplated by Section 11262, General Code, and the whole situation should be referred to the jurisdiction where all having personal rights in respect thereto may have their day in court by due process of law.

Furthermore, we view with some apprehension the establishment of a rule that would permit a creditor to bring an action in the courts of this state against a resident of this state, and attach bonds in the hands of a local bank received by it from its foreign correspondent in the regular course of business, upon the claim that the resident debtor owns the bonds by virtue of the fact that in the course of trade in said bonds the same had at some time passed through his hands. And owners of our local bonds, whether industrial or of any other character, in other states, would hesitate to send to Cleveland, through their respective banks, in the usual course of business, bonds they owned, if a creditor may, upon such a claim, compel those owners to come to Cleveland to defend their title to said bonds, upon the simple claim that the bonds at one time passed through the hands of the debtor here and that said debtor was the owner of them, after a showing such as made in this case of ownership in another.

For the reasons stated we have reached the conclusion that the court below should have dismissed the action without prejudice, under Section 11262,

General Code, and for want of jurisdiction for want of necessary parties. And coming now to render the judgment which the common pleas court should have rendered, for the reasons stated judgment is rendered in favor of plaintiff in error and for its costs.

*Judgment reversed, and judgment for plaintiff in error.*

Grant and Carpenter, JJ., concur.