STALLINGS *v.* BASS.

No. 16246. JULY 13, 1948.

4

*W. D. Lanier* and *Pierce Brothers*, for plaintiff.

*Cohen & Cohen*, for defendant.

JENKINS, Chief Justice. The controlling question, if answered in the negative, is whether the trial court had jurisdiction to entertain the petition of the father to modify the original divorce decree insofar as it affected the rights of the non-resident mother with respect to the custody of the child, which had been awarded to her. If the court still had continuing jurisdiction over the non-resident mother as relates to the custody and control of the child awarded to her, there would appear to be no impediment in exercising jurisdiction over the parents, since both parents voluntarily appeared to contest the issue as to the continued fitness of the non-resident mother to retain custody of the child, which had been awarded to her. If, however, the court did not have continuing jurisdiction of the subject-matter, that is, over the new issue respecting the continued fitness of the non-resident mother, and such jurisdiction could not be conferred upon the Georgia court by consent of the parties, then the entire proceeding was a nullity. In such a case, even in the absence of a motion to dismiss, the rule, as stated in *Smith* v. *Ferrario,* 105 *Ga.* 51 (31 S. E. 38) is that, "when this court discovers from

the record that a judgment has been rendered by a court having no jurisdiction of the subject-matter, and the case is brought here for review upon writ of error, this court will of its own motion reverse the judgment."

With respect to the question of continuing jurisdiction, after a decree by a Georgia court has been entered awarding custody of children in a divorce case, it is the general rule that "the duty of the State and the jurisdiction of its courts are continuing, unless and until voluntarily released, *or until such jurisdiction is lost in some way.*" (Italics ours.) *King* v. *King*, 202 *Ga.* 838 (44 S. E. 2d, 791). For that reason it is against the general policy of the law for the court to permit the removal of a child from the jurisdiction of the State; although such removal may be permitted where it is shown to be in the best interest of the child or children, especially where the award is made to a non-resident *parent.* *Pruitt* v. *Butterfield*, 189 *Ga.* 593 (6 S. E. 2d, 786). The question therefore is whether under the facts of this case the Georgia court entering the original decree has lost its jurisdiction over the now non-resident mother, to whom one of the minor children had been awarded. If it had lost such jurisdiction, it could not entertain a petition by the father to modify the original decree on the ground of a change in condition with respect to the fitness of the mother to retain custody. Clearly if the court was without jurisdiction to entertain the petition to modify with respect to custody of the child residing with the non-resident mother, then it had no jurisdiction to try the new issue as to her fitness. Since all the ancillary prayers for modification are dependent upon first establishing the unfitness of the mother, the entire proceeding thus stands or falls upon a determination of that issue.

This court, in *Milner* v. *Gatlin*, 139 *Ga.* 109 (2) (76 S. E. 860), has in principle passed upon the precise question although under somewhat different circumstances. In that case a divorce was obtained in Texas and the custody of the child of the marriage was awarded by the Texas court to the father, who thereafter moved to Georgia. The mother of the child, still a resident of Texas, brought suit in Texas to modify the original decree on the ground of changed conditions, and succeeded in revoking that part of the original decree awarding custody of the child to the

father. The mother thereupon instituted habeas corpus proceedings in Georgia and attempted to set up the reformed Texas decree to establish her right to the custody of said child. On an appeal by the mother, this court said: "Is the [Texas] decree of reformation a valid judgment At the time it was entered the father and the child were domiciled in Georgia, and this fact raises the question of the jurisdiction of the [Texas] court to make the second decree. . . Every State has the right to determine the marital status of its citizens, and the right to make such decision draws to it the right to dispose of all ancillary matters, such as the custody and support of children when the marital relation of the parents is dissolved. And it may be conceded that such a judgment may be modified or amended after the term at which it was rendered, in a proper case, but it does not follow that after a judgment of divorce has been rendered, awarding the custody of a child of the marriage to one of the parties, who thereafter changes his domicile and that of the child by removal to another State, the court still retains absolute control *over the res* [italics ours] or the parties by virtue of the original judgment, so as to give jurisdiction to authorize a modification on the merits, vitally affecting the domestic status of the non-resident parties. The judgment in this case did not forbid the removal of the child from the State of Texas or the jurisdiction of the court. The father was free to take up a domicile in Georgia at his pleasure, and, there being no inhibition against bringing his minor child to Georgia, the domicile of the father became the domicile of the infant. When the father took up his domicile in Georgia he was entitled to the custody of his infant child in his possession, both on account of the parental relation and the judgment of the Texas court. Whatever right the Texas court may have had to vacate or amend its judgment so as to affect the marital status of the parties, it was without power to fix a new status for the child, who was not within its jurisdiction at the time the judgment of reformation was rendered. The courts of one State have no power to change the status of citizens of another State." The court then ruled that the fact that the father, resident of Georgia, had been personally served would not require a different judgment, and concludes that the Texas court had no jurisdiction over the father

or his child, "to affirmatively fix the domestic status of the child after they became domiciled in this State," and "it is for this reason that the latter judgment [of modification] does not come within the purview of the full faith and credit clause of the Federal constitution."

Manifestly, since under the above ruling of the Supreme Court, the Georgia court in this case *has lost jurisdiction of the res,* that is, as set forth in that decision, it retains no jurisdiction to "fix the domestic status of the child," after it and its parent by becoming domiciled in another State, had become subject to the jurisdiction, rules, and the law of the foreign State governing such matters, the parties themselves could not by consent confer such jurisdiction upon our courts. Therefore the ruling in the above-quoted case controls in principle the question now before us. Manifestly, since it would be an anomaly for the courts of this State to hold that they are authorized to adjudicate under our law the rights of non-residents, while at the same time denying to the courts of other States similar jurisdiction over our own citizens.

The trial court was, therefore, without jurisdiction of the subject-matter of the petition to modify, and thus to deprive the State of Arkansas of jurisdiction over its own citizens. Accordingly, the entire proceeding was nugatory, and it is therefore unnecessary to pass upon any of the exceptions to the order of the trial court refusing to modify said original decree as prayed.

*Judgment reversed, with direction that the case be dismissed. Duckworth, Presiding Justice, Wyatt and Candler, Justices, and Judge Lilly concur. Atkinson and Head, Justices, dissent.*