**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 4, 2021**

# In the Court of Appeals of Georgia

A21A0996. DATAFORENSICS, LLC v. BOXER PROPERTY MANAGEMENT A/A/F BOXER F2, L.P. et al.

BROWN, Judge.

In this appeal from a dispossessory action, Dataforensics, LLC challenges the trial court's grant of summary judgment to Boxer Property Management A/A/F Boxer F2, L.P. and Boxer F2, L.P. (collectively "Boxer") as well as the trial court's order allowing Boxer to withdraw funds from the court registry. For the reasons explained below, we affirm in part and reverse in part.

"Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We apply a de novo standard of appellate review and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." (Citation

and punctuation omitted.) *Siarah Atlanta Highway v. New Era Ventures*, 350 Ga. App. 59, 60-61 (1) (828 SE2d 4) (2019).

On February 3, 2016, Dataforensics and Boxer entered a commercial lease contract under which Dataforensics leased property for a term in excess of five years, through August 31, 2021. The lease reflects that Dataforensics was leasing the property for "office purposes." Relevantly, Section 7 of the lease is titled "Landlord's Obligations" and is divided into three subsections: (a), (b), and (c). Section 7 (a) pertinently provides:

> (a) Landlord will furnish to Tenant at Landlord's expense:
> 1) water at those points of supply provided for the general use of tenants of the Building;
> 2) heated and refrigerated air conditioning from Monday through Friday 7:00 am to 6:00 pm, Saturday 8:00 am to 1:00 pm at such temperatures and in such amounts as reasonably considered necessary by Landlord; service on Sundays, and holidays are optional on the part of the Landlord (there is an additional $45.00 per hour after hours HVAC usage charge). **Landlord will furnish to Tenant heated and refrigerated air conditioning in season, at reasonable temperatures and amounts ("reasonable" being defined as 72 to 74 degrees Fahrenheit[)].**
> 3) janitorial services to the Premises . . .
> 4) passenger elevators for ingress to and egress from the Premises . . .
> 5) replacement of Building standard light fixtures; and
> 6) electric lighting for public areas and special services areas of the Building . . .

2

(Emphasis supplied.) Section 7 (b) provides details regarding electrical services.

Section 7 (c) provides as follows:

> Failure to furnish, stoppage, or interruption of these services resulting from any cause shall not render Landlord liable in any respect for damages to either person, property, or business, or be construed as an eviction of Tenant, work an abatement of rent, or relieve Tenant from performance of its obligations. Should any equipment furnished by Landlord cease to function properly, Landlord shall use reasonable diligence to repair the same promptly. Landlord shall not be obligated to furnish these services if Tenant is in default under this Lease. Notwithstanding the foregoing, if any particular service (designated in section 6(a) or 6(b) and within the sole control of Landlord) is discontinued for any continuous fifteen (15) day period, Tenant shall have the right to abate rent payments on a per diem basis.

While this section refers to the services "designated in section 6(a) or 6(b)," it is clear from the lease, as a whole, that this is a scrivener's error and the section intends to refer to the services designated in 7 (a) and 7 (b).[1]

The lease also provides that "[a]ny failure by Tenant to pay the Rent when due, after five (5) days written notice to cure" constitutes an "event of default" and that upon any event of default,

> Landlord may, in addition to all other rights and remedies afforded Landlord hereunder or by law or equity, take any of the following

---

[1] This seems especially clear given that Sections 6 (a) and (b) define "operating expenses."

actions: (a) Terminate this Lease by written notice to Tenant, in which event Tenant shall immediately surrender the Premises. . . . (b) Terminate Tenant's right to possession of the Premises without terminating this Lease by written notice to Tenant, in which event Tenant shall immediately surrender the Premises. . . .

On June 4, 2018, Dataforensics sent a letter to Boxer requesting a rent abatement for the months of March and April 2018, stating that Boxer had failed to meet its obligation under the lease to keep the premises at a temperature between 72 and 74 degrees. Beginning in June 2018, Dataforensics stopped paying rent. In August 2018, Boxer sent Dataforensics a notice of default and demand for possession.

Boxer filed a dispossessory action against Dataforensics and Scott Deaton, the managing member of Dataforensics, in the Magistrate Court of Dekalb County. Dataforensics answered and filed a counterclaim for breach of contract, alleging that Boxer failed to meet its obligation under the lease to keep the premises at a temperature between 72 and 74 degrees for the months of January, March, April, May, June, July, August, and September 2018. Dataforensics was ordered to pay into the registry of the court $32,219.61 in unpaid rent as well as $3,697.28 each month

thereafter. By consent of the parties, the action was transferred to the State Court of Dekalb County.[2]

Following Dataforensics' request for a jury trial and six months of discovery, Boxer filed a motion to draw funds from the court registry, asking that all rent payments remitted to the registry be disbursed to Boxer. The court granted Boxer's motion, ordering that the registry funds be "disbursed in full" to Boxer. Boxer then filed a motion for summary judgment on its claims as well as on Dataforensics' counterclaim for breach of contract, asking that the court award it unpaid rent through December 2019 and late fees in the amount of $179,764.75.

After a hearing, the trial court granted Boxer's motion for summary judgment, issuing a writ of possession and finding that Boxer was entitled to rent in the amount of $68,091.67 and $218 in court costs. The court declined to award Boxer late fees on the rent totaling $111,673.08 because Boxer failed to show that it provided written notice to Dataforensics of the assessed late fees, as required by the lease. The court found that the evidence, viewed in the light most favorable to Dataforensics, shows that Boxer breached the provision of the lease requiring it to maintain the temperature

___

[2] Following transfer of the action, the parties agreed that Deaton should be dismissed as a defendant, and the trial court added Boxer F2, L.P. as a plaintiff.

5

between 72 and 74 degrees, but even if Boxer breached this provision, Dataforensics was not entitled to withhold rent. According to the trial court's order,

> [i]f Section 7 (c) of the lease applies in this case, then [Dataforensics] has no right to recover damages for [Boxer's] breach and can only abate rent if service was discontinued for a continuous 15-day period, and then only on a per diem basis. [Dataforensics] argues that Section 7 (c) is not applicable because it relates only to a failure to furnish, stoppage, or interruption of heating and air conditioning. That did not occur here. [Boxer] provided heating and air, just not at the agreed-upon temperature.
> Assuming that Section 7 (c) does not apply, [Dataforensics] could not refuse to pay rent in response to [Boxer's] breach. [Boxer's] obligation to keep the temperature between 72 and 74 degrees was not a condition precedent to payment of rent. . . . Nor is there any evidence that the failure to maintain temperatures amounted to a constructive eviction. [Dataforensics'] remedy was to recover damages for the breach.

Additionally, the court's order explained that Boxer had received a disbursement of $71,899.69 in rent from the court registry, which included $3,607.28 for January 2020 rent, satisfying Dataforensics' liability for the $68,091.67 in past due rent through December 2019, and $200.74 of the court costs. Thus, the trial court entered judgment in favor of Boxer for the remaining amount of court costs, $17.26.

Dataforensics now appeals the trial court's order granting summary judgment to Boxer, contending that genuine issues of material fact remain, including whether

6

Boxer spoliated evidence. Dataforensics also appeals the court's order allowing Boxer to withdraw the rental funds paid into the court registry.

1. Dataforensics contends the trial court erred in granting summary judgment to Boxer on its claims as well as on Dataforensics' counterclaim. We conclude that the court did not err in granting summary judgment to Boxer on its claims, but did as to Dataforensics' counterclaim.

(a) *The Lease.* As it did below, Dataforensics contends that Section 7 (c) of the lease is inapplicable to this dispute, or at least ambiguous as to whether it applies, and that Boxer's obligation under 7 (a) to keep the premises at 72 to 74 degrees is a separate contractual duty not subject to the terms of 7 (c). According to Dataforensics, because this provision is ambiguous, its interpretation must be determined by a jury. Essentially, Dataforensics argues that Boxer's breach of the temperature requirement entitled Dataforensics to abate rent. Neither the plain language of the lease nor Georgia law supports this contention.

"The construction of a lease, which is a contract, is generally a question of law for the court. If the language of a contract is clear and unambiguous, we enforce those terms and need not look elsewhere to assist in the contract's interpretation." (Citations omitted.) *Mariner Healthcare v. Foster*, 280 Ga. App. 406, 409 (2) (634

7

SE2d 162) (2006). "[T]he issue of interpretation becomes a jury question only when there appears to be an ambiguity in the contract which cannot be negated by the court's application of the statutory rules of construction." (Citation and punctuation omitted.) *Warren Averett, LLC v. Landcastle Acquisition Corp.*, 349 Ga. App. 479, 482 (825 SE2d 864) (2019).

Dataforensics' contention that Section 7 (c) is inapplicable or alternatively that its applicability is ambiguous is without merit. By its own terms, Section 7 (c) of the lease applies to 7 (a), which includes Boxer's obligation to keep the premises at "reasonable temperatures . . . defined as 72 to 74 degrees Fahrenheit." As the trial court found in its order, this provision contemplates a failure to provide, stoppage, or interruption of water, electricity, heat, and air conditioning, and "[t]hat did not occur here. [Boxer] provided heating and air, just not at the agreed-upon temperature." In essence, Dataforensics seeks to rewrite the lease for *repeated* rather than *continuous* temperatures outside the "reasonable" range. This we cannot do. See *Miller v. GGNSC Atlanta*, 323 Ga. App. 114, 123 (2) (746 SE2d 680) (2013).

The nearest support in Georgia law for Dataforensics' contention in this regard is OCGA § 13-4-23, which provides: "If the nonperformance of a party to a contract is caused by the conduct of the opposite party, such conduct shall excuse the other

8

party from performance." This Court previously has found this provision applicable where "the evidence establishes a connection between [the lessor's] conduct and [the lessee's] business losses and resultant inability to pay rent." *Allen v. Harkness Stone Co.*, 271 Ga. App. 397, 400 (609 SE2d 647) (2004). See also *Mkt. Place Shopping Center v. Basic Bus. Alternatives*, 213 Ga. App. 722-723 (2) (445 SE2d 824) (1994) (affirming trial court's finding that landlord's breach excused tenant's duty to pay rent under OCGA § 13-4-23; provision in lease provided that landlord would not rent space to another bakery or deli and evidence showed that tenant's sales declined sharply after landlord leased space to a competing deli). In *Allen*, the lessee abandoned the premises and stopped paying rent because it was forced out of business when its landlord, the company's largest customer, refused to pay $65,000 for product it had received. 271 Ga. App. at 400 (1). We found this evidence sufficient to show that the lessee's nonperformance was excused and affirmed the trial court's finding in favor of the lessee on the landlord/lessor's counterclaim for unpaid rent. Id. Here, Dataforensics has never asserted, and there is no evidence to support, that Boxer's failure to keep the temperature of the premises between 72 and 74 degrees during business hours led to a financial inability on the part of Dataforensics to pay rent. Instead, as Dataforensics states in its brief, it decided that

9

it was entitled to cease paying rent in response to Boxer's breach of a "condition precedent to the payment of rent." [3]

"A condition precedent must be performed before the contract becomes absolute and obligatory upon the other party." OCGA § 13-3-4. "Forfeiture of a lease by acts of a party to a lease because of a breach of a covenant or condition is not favored, but where there is an express provision in the contract, termination or forfeiture of the lease will be permitted." (Citation and punctuation omitted.) *Woody's Steaks v. Pastoria*, 261 Ga. App. 815, 819 (2) (584 SE2d 41) (2003). There is no such express provision in the lease at issue. Compare *Chastain v. Spectrum Stores*, 204 Ga.

---

[3] The trial court also concluded that the failure to keep the premises between 72 and 74 degrees during business hours did not amount to a constructive eviction. Constructive eviction requires a showing

> (1) that the landlord in consequence of his failure to keep the rented building repaired allowed it to deteriorate to such an extent that it had become an unfit place for the defendant to carry on the business for which it was rented, and (2) that it could not be restored to a fit condition by ordinary repairs which could be made without unreasonable interruption of the tenant's business.

(Citation and punctuation omitted.) *Delta Cleaner Supply Co. v. Mendel Drive Assoc.*, 286 Ga. App. 227, 229 (1) (648 SE2d 651) (2007). Moreover, "there must be some grave act of a *permanent* character done by the landlord with the intention of depriving the tenant of the enjoyment of the demised premises before a constructive eviction will result." (Citation and punctuation omitted; emphasis in original.) Id. In this case, there is no evidence to support any of these elements.

10

App. 65, 66 (418 SE2d 420) (1992) (where lease stated that the granting of two curb cuts on the road into the property was a condition precedent, the failure of which would render the lease null and void, tenant was entitled to void lease upon failure of condition and landlord was not entitled to collect rent). Dataforensics' obligation to pay Boxer rent and Boxer's obligation to maintain the temperature of the premises between 72 and 74 degrees during business hours were independent covenants. See *Beaulieu Group v. S&S Mills*, 292 Ga. App. 455, 459 (1) (664 SE2d 816) (2008).

(b) *Spoliation*. Dataforensics also contends that the trial court erred in granting summary judgment to Boxer because "genuine issues of material fact remain regarding whether [Boxer] spoliated evidence." We conclude that Dataforensics failed to preserve this argument as a ground to preclude the entry of summary judgment in Boxer's favor.

On the day prior to the summary judgment hearing, Dataforensics filed a motion for sanctions against Boxer for spoliation of evidence, asserting that Boxer had failed to preserve "temperature readings from the Energy Management System (EMS)" as well as "readings from portable temperature loggers placed within [the premises] for several months beginning in either 2018 or 2019." Dataforensics pointed to a June 4, 2018 letter sent to Boxer, "provid[ing] notice to [Boxer] to

11

preserve all temperature tracings/readings from [the premises]." The letter requested that Boxer preserve all temperature measurements related to the premises and "that [Boxer] provide temperature measurement on the last day of each month to Dataforensics in order to determine rent abatement for the remainder of the lease term."[4] Despite filing its spoliation motion at 8:31 p.m. the evening before the 9:00 a.m. hearing, Dataforensics did not raise the spoliation issue during the hearing nor did it request that the trial court rule on its spoliation motion before ruling on Boxer's motion for summary judgment. And, it does not appear from the record that the trial court ruled on Dataforensics' motion before granting summary judgment to Boxer.

In the analogous context of a discovery motion, this Court has held that a failure to invoke a ruling by the trial court on discovery issues prior to the court's resolution of a motion for summary judgment does not render the summary judgment ruling premature. See *Godwin v. Mizpah Farms, LLLP*, 330 Ga. App. 31, 34 (1) (766 SE2d 497) (2014) (finding summary judgment issues were ripe for adjudication in case where "the record contains no indication that [appellant] asked the trial court for a continuance of the summary judgment hearing or a delay in its ruling until the

---

[4] The record shows that Dataforensics had access to and possessed at least some evidence of temperature readings from the EMS system for some months during 2018 and 2019.

alleged discovery issue could be resolved . . . [t]hus, [appellant] did not present this issue to the trial court for its consideration") (punctuation omitted). See also *Parks v. Hyundai Motor America*, 258 Ga. App. 876, 877 (1) (575 SE2d 673) (2002) ("where a party fails to move for continuance or otherwise object to the court's failure to rule on the motion to compel prior to granting summary judgment, this Court has found that the party waived his right to appeal the issue"). Similarly, in *Sammor v. Mayor & Aldermen of Savannah*, 176 Ga. App. 176 (335 SE2d 434) (1985), we held: "The record before us does not indicate that the appellants moved to continue the hearing on the motion for summary judgment pending a ruling on their motion to compel or that they otherwise objected to the court's failure to rule on the motion to compel prior to ruling on the motion for summary judgment. Consequently, we hold that the appellants have waived the right to assert the court's failure to rule on the motion to compel as error on appeal." Id. at 177 (1).

In the case before us, Dataforensics apparently seeks to avoid the waiver issue by asserting spoliation only as a genuine issue of material fact precluding summary judgment as opposed to enumerating as error the trial court's failure to rule on its motion for spoliation sanctions. Without a ruling by the trial court on its claim of spoliation, Dataforensics cannot use the unresolved issue of spoliation to assert that

13

genuine issues of material fact nonetheless exist. And, without the imposition of an evidentiary presumption or some other remedy within the discretion of the trial court, the allegations of spoliation have no impact on the determination of whether genuine issues of material fact preclude summary judgment in this case. See *Demere Marsh Assoc. v. Boatright Roofing & Gen. Contracting*, 343 Ga. App. 235, 248 (4) (808 SE2d 1) (2017) ("If the trial court finds evidence of spoliation, it is authorized to craft a solution that fits the facts including (1) charging the jury that spoliation of evidence creates the rebuttable presumption that the evidence would have been harmful to the spoliator; (2) dismissing the case; or (3) excluding testimony about the evidence.") (citation and punctuation omitted). As "a party cannot do indirectly what the law does not allow to be done directly," *Sommers Oil Co. v. Ga. Dept. of Agriculture*, 305 Ga. App. 330, 332 (699 SE2d 537) (2010), we find no merit in Dataforensics' contention that the alleged spoliation of evidence creates genuine issues of material fact in this case.

(c) *Limitation of Liability.* Dataforensics also contends that the trial court erred in granting summary judgment in favor of Boxer on Dataforensics' counterclaim for breach of contract based on a limitation of liability clause in the lease. We agree.

14

In its summary judgment order, the trial court found that Section 25 of the lease "limited liability for . . . breach to [Dataforensics'] actual direct, but not consequential damages" and thus "the lease limits recovery to actual damages [and] nominal damages is not an available remedy. . . . Because there is no evidence of actual damages caused by [Boxer's] failure to keep the temperature between 72 and 74 degrees, [Boxer is] also entitled to summary judgment on [Dataforensics'] counterclaim."

Relying on OCGA § 13-6-6, Dataforensics argues that "lack of proof of actual damages in a contract dispute does not warrant entry of summary judgment." This Code section provides: "In every case of breach of contract the injured party has a right to damages, but if there has been *no actual damage*, the injured party may recover nominal damages sufficient to cover the costs of bringing the action." (Emphasis supplied.) OCGA § 13-6-6. As stated, the trial court found that Dataforensics was precluded from recovering nominal damages by Section 25 of the lease, which provides: "The liability of [Boxer] to [Dataforensics] for any default by [Boxer] under the terms of this Lease shall be limited to [Dataforensics'] actual direct, but not consequential, damages therefor and shall be recoverable from the interest of

15

[Boxer] in the Building. . .” Thus, the lease limits the type of damages Dataforensics may recover in the event of Boxer's breach to “actual direct . . . damages.”

“Provisions severely restricting remedies[, such as Section 25 of the lease] act as exculpatory clauses and therefore should be explicit, prominent, clear and unambiguous.” (Citation and punctuation omitted.) *Imaging Systems Intl. v. Magnetic Resonance Plus*, 227 Ga. App. 641, 644-645 (1) (490 SE2d 124) (1997) (contract provision precluding either party from recovering any lost profits, or any incidental, special, or consequential damages acted as exculpatory clause).

> In determining whether a limitation of liability clause or an exculpatory clause is sufficiently prominent, courts may consider a number of factors, including whether the clause is contained in a separate paragraph; whether the clause has a separate heading; and whether the clause is distinguished by features such as font size.

(Citation and punctuation omitted.) *Warren Averett*, 349 Ga. App. at 484 (1) (b). The provision at issue is the same font size as that used throughout the entirety of the lease, and it is not capitalized, italicized, or set in bold type for emphasis. See, e.g., *Parkside Center v. Chicagoland Vending*, 250 Ga. App. 607, 611 (2) (552 SE2d 557) (2001) (clause at issue had no separate paragraph heading, and the typeface was the same size as in the surrounding paragraphs). Nor is this provision set off in a separate

16

section that specifically addressed liability or recoverable damages, with a bold, underlined, capitalized, or italicized specific heading, such as "Limitation on Liability." See, e.g., *2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894, 899 (1) (a) (775 SE2d 243) (2015) (clause at issue titled "Limitation on Liability of SFG"). It is not in a prominent place within the lease to emphasize the importance of its limitation on recoverable damages. See, e.g., *Grace v. Golden*, 206 Ga. App. 416, 418 (1) (b) (425 SE2d 363) (1992) (provision in two-page document was immediately above and adjacent to the signature line for the opposing party in larger and bolder type face). Instead, the provision is found on page 13 of the 17-page lease in Section 25, titled "Landlord's Liability," and is in the same font as the rest of the lease. Under these circumstances, we conclude that the provision is not sufficiently prominent so as to be enforceable. See *Warren Averett*, 349 Ga. App. at 484-485 (1) (b) (single-spaced exculpatory provision, which was not capitalized, bolded, underlined, or italicized and was included in a section containing several unrelated provisions and generically entitled "Issue Resolution" near the bottom of the third page, failed to meet prominence requirement). See also *Parkside Center*, 250 Ga. App. at 611-612 (2). Compare *Imaging Systems*, 227 Ga. App. at 644-645 (1) (exculpatory clause set off in its own paragraph with the heading "'LIMITATION OF

17

LIABILITY'" and with the key language all capitalized was sufficiently prominent to be enforceable). It follows that the trial court erred in granting summary judgment to Boxer on Dataforensics' counterclaim on the basis that Dataforensics was precluded from recovering nominal damages under this provision of the lease.

Boxer contends summary judgment on Dataforensics' counterclaim was proper because Dataforensics only plead for special damages, and "when allegations are insufficient to authorize recovery of any special damages and there is no prayer for general damages, plaintiff is not entitled to nominal damages." *East Side Lumber & Coal Co. v. Barfield*, 195 Ga. 505 (24 SE2d 681) (1943). However, this principle arose prior to the adoption of the Civil Practice Act and is no longer applicable.

> While after the advent of the Civil Practice Act this [C]ourt in at least two instances brought forward the old rule disallowing nominal damages where only unrecoverable special damages are sued for[,] those holdings appear suspect in view of the demise of the old procedural rules concerning issue pleading and the construction of the pleading against the pleader.

(Citations and punctuation omitted.) *Bradley v. Godwin*, 152 Ga. App. 782, 786-787 (3) (264 SE2d 262) (1979) (physical precedent only). "[U]nder the Civil Practice Act it is not necessary to pray specifically for general or nominal damages in order to

18

present a question for the jury as to nominal damages." Id. Accord *Brock v. King*, 279 Ga. App. 335, 342 (3), n.22 (629 SE2d 829) (2006). Accordingly, this argument is without merit.

Because "the lack of evidence regarding the actual amount of damages is not dispositive on a motion for summary judgment in a breach of contract case," and Dataforensics is not precluded from recovering nominal damages,[5] the trial court erred in granting summary judgment to Boxer on the counterclaim. (Citation and punctuation omitted.) *6428 Church Street, LLC v. SM Corrigan, LLC*, 352 Ga. App. 437, 444 (3) (834 SE2d 603) (2019) ("because in every case of breach of contract, the injured party has a right to damages, but, if there has been no actual damage, the injured party may recover nominal damages sufficient to cover the costs of bringing the action") (citation and punctuation omitted).

2. Dataforensics also appeals the trial court's order disbursing to Boxer the rent Dataforensics had paid into the court registry. According to Dataforensics, the funds

---

[5] Dataforensics seemingly concedes it has no evidence of actual damages. During the hearing on Boxer's motion for summary judgment, Dataforensics claimed that its counterclaim damages are "rent that had been paid when they had breached the lease by not complying with the temperature requirements." But, when asked by the trial court during the hearing on Boxer's motion for summary judgment to identify the damage resulting from the failure to keep the temperature between 72 and 74 degrees, Dataforensics replied, "We don't have to establish the damage."

19

in the registry "remain an issue in controversy" because Dataforensics "continues to take the position that [Boxer is] not entitled to payment of rent based on [Boxers'] default under the Lease Agreement." Dataforensics moreover argues that there is no legal basis for allowing Boxer to withdraw the funds prior to resolution of the case.

"When, in an action for rent, title is shown in the plaintiff and occupation by the defendant is proved, an obligation to pay rent is generally implied." OCGA § 44-7-5. In dispossessory cases, "[t]he defendant shall be allowed to remain in possession of the premises pending the final outcome of the litigation; provided, however, that, at the time of his answer, the tenant must pay rent into the registry of the court pursuant to Code Section 44-7-54." OCGA § 44-7-53 (b).

> The court shall order the clerk of the court to pay to the landlord the payments claimed under the rental contracts paid into the registry of the court as said payments are made; provided, however, that, if the tenant claims that he or she is entitled to all or any part of the funds and such claim is an issue of controversy in the litigation, the court shall order the clerk to pay to the landlord without delay only that portion of the funds to which the tenant has made no claim in the proceedings or may make such other order as is appropriate under the circumstances. That part of the funds which is a matter of controversy in the litigation shall remain in the registry of the court until a determination of the issues by the trial court. If either party appeals the decision of the trial court, that part of the funds equal to any sums found by the trial court to be due from the

20

landlord to the tenant shall remain in the registry of the court until a final determination of the issues. The court shall order the clerk to pay to the landlord without delay the remaining funds in court and all payments of future rent made into court pursuant to paragraph (1) of subsection (a) of this Code section unless the tenant can show good cause that some or all of such payments should remain in court pending a final determination of the issues.

OCGA § 44-7-54 (c).

Given our holding in Division 1, affirming the trial court's grant of summary judgment to Boxer on its claim to collect rent and finding that Dataforensics is not entitled to abate rent under the plan language of the lease, the rent paid into the registry is no longer "an issue of controversy in the litigation." Additionally, the language of OCGA § 44-7-53 (b) provides that if *either* party appeals the trial court's decision, only that portion of the funds equal to any amount found by the trial court to be *due from the landlord to the tenant* shall remain in the registry of the court until a final determination of the issues. The rest of the funds and all payments of future rent are to be disbursed to the landlord "without delay."

*Judgment affirmed in part and reversed in part. Doyle, P. J., and Reese, J., concur*.

21